Mavis BUDD, Plaintiff,

v.

The CITY UNIVERSITY OF NEW
YORK, BARUCH COLLEGE &
the District Council #37, Defendants.

No. 89 Civ. 0753 (RPP).

United States District Court,
S.D. New York.

Oct. 15, 1990.

Colin A. Moore, P.C., Brooklyn, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. by Lisa R. Dell, Asst. Atty. Gen., State of N.Y., Dept. of Law, New York City, for defendant City University of New York, Baruch College.

Dist. Council # 37 by Leonard D. Poletta, Asst. Gen. Counsel, New York City, for defendant Dist. Council # 37.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Mavis Budd ("Budd"), a former part-time college assistant, brings this action against the City University of New York, Baruch College ("Baruch") for employment discrimination based on her being a black of Jamaican ancestry, and against District Council 37 ("the Union") for breach of the duty of fair representation. Plaintiff sues to recover under 42 U.S.C. Section 2000e Title VII, 42 U.S.C. Section 1981, and 42 U.S.C. Section 1983. In the prayer for relief, plaintiff requests that the Court: 1) grant her compensatory and punitive relief in the amount of $600,000; 2) reinstate her to her previous position with back pay; 3) enjoin Baruch from continuing its alleged discriminatory promotional practices; and 4) order the Union to render effective representation to all of its members.

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 56.

## BACKGROUND

The plaintiff has not submitted a 3(g) statement in accordance with Civil Rule 3(g) of the District Court, which states:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

Accordingly, the Court has endeavored to determine from the plaintiff's answering papers whether evidence has been offered to rebut any of the material facts stated by defendants.

## DISCUSSION

Summary judgment is appropriate if the evidence offered demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material

fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the court must view the facts in the light most favorable to the non-moving party's favor. *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

## I.  Title VII Claims

The Supreme Court has set forth a three-step analysis of Title VII claims. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *Sorlucco v. New York City Police Dept.*, 888 F.2d 4, 7 (2d Cir.1989). The initial burden is on plaintiff to establish a prima facie case of unlawful discrimination. If that burden is satisfied, the burden shifts to Baruch to articulate some legitimate, non-discriminatory reasons for not renewing plaintiff's contract. If Baruch carries this burden, plaintiff has the ultimate burden of proving by a preponderance of the evidence that Baruch's stated reasons are merely pretextual.

### A.  Discrimination In Promotion

■  First, Title VII prohibits employers from discriminating

> "against any individual with respect to ... conditions, or privileges of employment, because of such individual's ... race ... or national origin."  42 U.S.C. Section 2000e–2(a)(1).

Plaintiff alleges in her complaint that Baruch discriminatorily denied her a promotion. Plaintiff alleges that she was told when she was hired that she had to take a typing test before she could be promoted to a full-time employee, but that white part-time College Assistants were appointed to full-time personnel employees "without taking a typing test."  Complaint, ¶¶ 6, 7, 8. Baruch controverts plaintiff's allegation by stating that when she was hired, her job application shows she lacked typing experience or skills and that she has admitted to still possessing less typing skills than re-

quired.  Baruch also points out that plaintiff has failed to identify any of the white College Assistants who were allegedly promoted in her place. Defendant Baruch's Memorandum of Law In Support of Motion for Summary Judgment, December 13, 1989, at 17–18. Baruch also shows that the two white College Assistants were not promoted but resigned.  Affidavit of Helena W. McIntosh, November 27, 1989, at 5.

To establish *prima facie* her alleged case of discriminatory denial of promotion, plaintiff must show that: (1) she belongs to a protected class; (2) she applied for a position for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) the position remained open or was later filled by a white. *Sweeney v. Research Foundation at State University of New York*, 711 F.2d 1179, 1185 (2d Cir.1983). The record shows that 1) although plaintiff belongs to a protected class, she has failed to produce any evidence 2) that she ever formally applied for a promotion, 3) that she was qualified for the position, *LaBeach v. Nestle Co., Inc.*, 658 F.Supp. 676, 683 (S.D.N.Y.1987), or 4) that white part-time College Assistants were appointed as full-time provisional employees without taking a typing test. Accordingly, defendants' motion for summary judgment is granted as to the alleged discrimination in promotion.

### B.  Discrimination In Compensation

■  Title VII provides:

It is unlawful for an employer "to discriminate against any individual with respect to his compensation, ... because of such individual's race ... or national origin.  42 U.S.C. section 2000e–2(a)(1).

Plaintiff alleges that she received disparate treatment by Baruch with regard to compensation in that it gave overtime benefits to similarly situated white employees for working during Saturday testing sessions while it denied them to her.  Complaint at 5.  She reaffirms in her response papers the allegations in her complaint that four white College Assistants were paid $50 extra for working on Saturdays, but

that she was not given such overtime benefits.

Baruch concedes that plaintiff worked on two Saturdays in 1983. McIntosh Aff. at 4. However, Baruch contends that plaintiff's contract precluded her from receiving overtime compensation. Baruch denies that any College Assistant received overtime compensation for working at Saturday testing sessions, but Baruch concedes that some of its full-time employees who worked at those sessions were paid $50 extra for their services. Affidavit of Ronny Widener, November 21, 1989, at 3–4. Baruch claims that such employees "were compensated in accordance with the operative provisions of their union contract and/or other Baruch College guidelines governing their respective job titles." McIntosh Aff. at 4.

Plaintiff has not come forward with evidence to rebut Baruch's explanation and to support the allegations in her complaint. Plaintiff's deposition testimony is that she worked two Saturdays in 1983 and first learned in mid–1984 by statements from Jane Maynard, a secretary, that others had received an extra check of $50 for working on Saturday; that she spoke to her supervisor, McIntosh, about it in January 1985 and that her supervisor did not respond by offering her the $50 for such work, although plaintiff requested it. Plaintiff's Deposition of June 9, 1989 ("Plaintiff's Deposition"), 9B–12B. Later in her testimony, plaintiff stated she was also told on the first Saturday she worked in 1983 by another part-time College Assistant, Ida Bernardini, that McIntosh was paying Bernardini an extra $50 for the Saturday testing. Plaintiff's Deposition, 28A.[1]

Plaintiff has produced no evidence contradicting Baruch's evidence under the Collective Bargaining Agreement ("CBA") that College Assistants are not entitled to any additional compensation beyond their regular hourly wage for working at a Saturday testing session. In addition, the record undercuts plaintiff's allegation that white College Assistants were paid $50 extra for Saturday work. It indicates that all College Assistants who worked in the Testing Office, including Ms. Suglia and Ms. Bernardini, were paid their regular hourly wage for working Saturdays.[2]

Nevertheless, Baruch's records for College Assistants attached to its motion papers are records of attendance and rates of pay and do not constitute records of the payments received by College Assistants. This does not constitute clear evidence that College Assistants did not receive the $50 in 1983–1986. Accordingly Baruch's motion for summary judgment on plaintiff's discriminatory denial of promotion is granted and its motion for summary judgment on overtime benefits claims is denied, without prejudice to the renewal of the motion with such evidence within 20 days of the filing of this opinion and order.

**C. Discriminatory Termination Claim**

Title VII provides:

It shall be an unlawful employment practice for an employer to fail or refuse to hire ... any individual ... because of such individual's race ... or national origin. 42 U.S.C. 2000e–2(a)(1).

Plaintiff alleges that Baruch discriminatorily terminated her (by failing to rehire her) because of her race and national origin. Complaint, ¶ 11. The case at bar does not involve the termination of plaintiff for misconduct, but rather the non-renewal of her contract. However, "[n]on-renewal of a contract is tantamount to a dismissal and constitutes an actionable employment decision under Title VII." *Tye v. Board of Education*, 811 F.2d 315, 317 (6th Cir.

---

**1.** A review of plaintiff's deposition testimony as submitted by plaintiff reveals that Melita Waite and Beulah Boone, alleged in the Complaint to be College Assistants, were not College Assistants and that Grace Suglia and Ida Bernardette (sic) were the only part-time College Assistants. Plaintiff did not testify that she had reason to believe Suglia received $50 for work on Saturday, as alleged in her complaint.

**2.** Plaintiff's deposition further undercuts her allegation that Ms. Suglia received overtime compensation for Saturday work.

Q. Did Suglia ever work on a Saturday or do any kind of testing? A. I don't know. Pl. Tr. at 25A.

1987), *cert. denied sub nom. Board of Education v. Tye*, 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987); *Ford v. Nicks*, 741 F.2d 858, 860 n. 1 (6th Cir.1984), *cert. denied sub nom. Nicks v. Ford*, 469 U.S. 1216, 105 S.Ct. 1195, 84 L.Ed.2d 340 (1985).

### 1. Prima Facie Case

■ Plaintiff bears the initial burden of establishing a prima facie case of discrimination, which she may do by showing: 1) that she belonged to a protected class; 2) that her performance was satisfactory; 3) that she was discharged/not reappointed; and 4) that afterwards, "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. *See Meiri*, 759 F.2d at 995.

The record shows: 1) that plaintiff is a female black of Jamaican origin; 2) that her job performance was satisfactory, Plaintiff's Exhibit B.; 3) that she was not reappointed as a College Assistant; and 4) that after plaintiff's contract was not renewed, her position was filled by two female black College Assistants of non-Jamaican origin. McIntosh Aff. at 6. Thus, the Court finds that plaintiff has established a prima facie case of discrimination on the basis of national origin in regards to the non-renewal of her contract. The burden of proof shifts to Baruch.

### 2. Rebuttal

■ Baruch's asserted reasons for not renewing plaintiff's contract are that plaintiff's job performance was inadequate and her office behavior inappropriate. It supports these contentions by pointing to the last job evaluation that plaintiff received, which noted that plaintiff "often antagonize[d] other people, [had displayed] a poor attitude, [and had a] tendency to resent taking orders from [her] supervisor." McIntosh Aff., Ex. F.

Further, Baruch also points to a letter that Ms. McIntosh sent to plaintiff in October 1985 which noted plaintiff's "general unpleasant and irrational demeanor ... [r]udeness ... abusive and provocative ... tones, and persistent outburst ..." McIn-

tosh Aff., Ex. A. The Court finds that Baruch has satisfied its burden of articulating legitimate reasons for not renewing plaintiff's contract and the burden shifts to plaintiff.

### 3. Pretext

■ Plaintiff may satisfy the burden of demonstrating that Baruch's stated reasons are merely pretextual by showing that its explanation for not renewing her contract is unworthy of credence. *Burdine*, 450 U.S. at 256–57, 101 S.Ct. at 1095–96. Plaintiff contends that Baruch's stated reasons are pretextual by pointing out that Ms. McIntosh gave her the following ratings in her last job evaluation in January, 1986: 1) satisfactory work performance; 2) good attendance and punctuality; 3) good knowledge of duties; and 4) ability to work with minimal supervision. Plaintiff's Exhibit B. Plaintiff has also put forth evidence of statements by Baruch's Assistant Provost that described her as "intelligent and responsible." Plaintiff's Exhibit C. A court in a Title VII case may rely on the evaluations rendered by supervisors to determine if an employee's work performance was satisfactory. *Meiri*, 759 F.2d at 995.

The ultimate inquiry in this determination of whether Baruch's charge of unsatisfactory job performance is legally sufficient to dismiss plaintiff's Title VII claim at the summary judgment stage is whether plaintiff's performance met Baruch's legitimate expectations. *Thermidor*, 683 F.Supp. at 412. Plaintiff's satisfactory work performance rating by Ms. McIntosh shows that plaintiff's performance met Baruch's legitimate expectations.

To demonstrate that Baruch's stated reasons are pretextual, plaintiff has also presented direct evidence of anti-Jamaican statements by McIntosh. Plaintiff maintains that upon hearing that plaintiff's son was about to marry a white woman, McIntosh stated:

Yes, this is what these Jamaicans do. They get a chance to come to this country and when they get here they do not care about us, the black Americans. They are always going to marry white women and the women from Jamaica feel

they are better than the 'black American' woman.

Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment, 7. Such derogatory statements constitute sufficient evidence of discriminatory animus. *See Thermidor,* 683 F.Supp. at 410; *Blesedell v. Mobile Oil Co.,* 708 F.Supp. 1408, 1419 (S.D.N.Y.1989); *Long v. A.T. & T. Information Systems Inc.,* 733 F.Supp. 188, 203 (S.D.N.Y.1990). Baruch College contends that McIntosh's alleged derogatory statements "have been directly controverted," but nowhere in McIntosh's affidavit does she deny making the statements.[3]

At the summary judgment stage, plaintiff does not have to prove that the employer's stated reasons for not renewing her contract are pretextual. *Sorlucco,* 888 F.2d at 7. "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff [has her] day in court." *Id.* Based on the evidence presented by plaintiff, it is evident that plaintiff has demonstrated the existence of a genuine issue of material fact as to whether Baruch's stated reasons for not renewing her contract are pretextual. Moreover, the issue of plaintiff's non-reappointment requires an inquiry into the intent of Ms. McIntosh. Summary judgment is not appropriate on motivation. *Walker v. Triborough Bridge and Tunnel Authority,* 89 Civ. 6371 (KMW), 1990 WL 52139 (S.D.N.Y.1990); *Meiri,* 759 F.2d at 998.

Accordingly, summary judgment is denied on plaintiff's discriminatory termination/non-renewal of contract claim.

### D. Duty of Fair Representation

▇ Plaintiff's allegation of breach of the duty of fair representation by the Union is premised on the Union's refusal to file a grievance or obtain an arbitration hearing on her behalf with regard to Baruch's decision not to renew her contract. In essence, plaintiff's claim is that: 1) she told the Union about the discriminatory treatment she had endured at Baruch; 2) the Union refused to follow the CBA's grievance procedure; and 3) the Union recommended that she see a psychiatrist. Plaintiff's Memorandum of Law at 6–7.

Although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," an individual employee does not have an absolute right to have a Union take his or her grievance to arbitration. *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1966). In order to establish a breach of the duty of fair representation, plaintiff must show that the Union's conduct toward her was arbitrary, discriminatory, or in bad faith. *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916; *Patterson v. United Federation of Teachers,* 480 F.Supp. 550 (S.D.N.Y.1979).

The record shows that Ms. Joan Reed, President of Local 2054 and a Grievance Representative, took affirmative action to secure her re-appointment as a College Assistant. As stated *supra,* Ms. Reed inquired about plaintiff's non-reappointment and, accompanied by plaintiff, met with Mr. Potasky in an attempt to get Baruch to reconsider its decision. Although such action by the Union was unsuccessful in securing plaintiff's re-appointment, it is evidence that the Union's conduct toward plaintiff was not wholly arbitrary.

▇ Plaintiff has not come forward with evidence that the Union discriminated against her or acted in bad faith. Plaintiff points to Ms. Reed's recommendation that plaintiff receive psychological counseling from the Union's Personal Services Unit ("PSU") as indicative of discrimination or bad faith by the Union. Plaintiff's Deposition at 14D. Ms. Reed explains that she recommended psychological counseling to plaintiff before meeting Mr. Potasky because she felt that Baruch officials might agree to reappoint her if they knew that she would accept counseling. Reed Aff. at 5.

During the June 12, 1986 meeting with Mr. Potasky, Ms. Reed maintains that she

---

**3.** Plaintiff further controverts Baruch's legitimate reasons by stating that McIntosh retaliated against her after she refused to work on Saturdays without receiving the $50 overtime compensation. Plaintiff's Aff. in Opp. at 7.

spoke to him separately and sought to explore the possibility of reappointment by the following question: "If I get her to go to PSU would you reconsider appointing her for another year?" and that Mr. Potasky responded: "You can do whatever you want. I'm not making you any promises." Reed Aff. at 6. After the meeting, plaintiff refused Ms. Reed's recommendation that she agree to accept counseling. Since the Union has explained why it had recommended psychological counseling to plaintiff, plaintiff's reliance on the recommendation without more is insufficient evidence of discrimination or bad faith by the Union.

■ Plaintiff also alleges that the Union conspired with Baruch to deprive her of the CBA's procedures regarding an employee's termination for misconduct. Plaintiff's Memorandum of Law at 12. Since the case at bar involves the non-renewal of plaintiff's contract and not the termination of plaintiff for misconduct, the Court does not have to interpret the various CBA provisions concerning termination procedures. As for the non-renewal of plaintiff's contract, there is no CBA provision which entitles plaintiff to a contract renewal nor does any provision describe procedures surrounding a contract non-renewal decision.

There are no genuine issues of material fact as to whether the Union acted arbitrarily, discriminatorily, or in bad faith in representing plaintiff. Accordingly, the Union's motion for summary judgment dismissing plaintiff's claim of a breach of the duty of fair representation is granted.

## II. Section 1981 Claim

■ Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens.

42 U.S.C. § 1981. In *Patterson v. McClean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court set forth the scope of section 1981. The Supreme Court held that the right to make contracts "extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment," and that the right to enforce contracts "embraces protection of a legal process, that will address and resolve contract-law claims without regard to race." *Id.* 109 S.Ct. at 2372–73. *See Alexander v. New York Medical College*, 721 F.Supp. 587 (S.D.N.Y.1989).

Plaintiff's allegations against Baruch do not relate to discriminatory treatment during the formation of the contractual relationship or with respect to the legal process for enforcing established contractual rights. Instead, the allegations of discriminatory denial of a promotion and overtime benefits, and termination against Baruch exclusively concern issues which arose after the formation of the contract. Accordingly, the section 1981 claims against Baruch are dismissed.

The Union is entitled to summary judgment on the plaintiff's section 1981 claim. A union violates section 1981 when it "follow[s] a policy of refusing to file grievable racial discrimination claims." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668–69, 107 S.Ct. 2617, 2625, 96 L.Ed.2d 572 (1986). As discussed in the previous section, plaintiff has not presented any evidence that the Union refused to file her grievance for any bad faith reason.

## III. Section 1983 Claim

■ Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court described which parties are to be considered "persons" liable under section 1983. The Supreme Court held that

"neither a State nor its officials acting in their official capabilities are 'persons' under section 1983." *Id.* 109 S.Ct. at 2309–10. Baruch is an institution of New York State pursuant to New York Education Law section 6203 and therefore is not a "person" within the meaning of section 1983. Accordingly, plaintiff's discrimination claims against Baruch are not actionable under section 1983 and are dismissed.

## CONCLUSION

Baruch's motion for summary judgment on plaintiff's discriminatory denial of promotion is granted. Baruch's motion for summary judgment on plaintiff's discriminatory compensation is denied without prejudice. Baruch's motion for summary judgment on plaintiff's discriminatory termination claim is denied. The Union's motion for summary judgment on plaintiff's claim of a breach in the duty of fair representation is granted. Plaintiff's discrimination claims under sections 1981 and 1983 are not actionable and are dismissed.

IT IS SO ORDERED.