**W.J. ELLIS, Plaintiff,**

v.

**NCNB TEXAS NATIONAL BANK, Defendant.**

**Civ. A. No. 3:91–CV–087–X.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 21, 1994.

---

244

Hal Keith Gillespie and David Kohlman Watsky, Gillespie Rozen & Tanner, Dallas, TX, for plaintiff.

Dean Joseph Schaner, William C. Strock, and Jill J. Weinberg, Haynes & Boone, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

NOW before the Court are Defendant's Motion for Reconsideration, filed June 4, 1993, the response to that motion and the reply to the response. Having reviewed these filed materials and the applicable law, the Court determines that Defendant's motion should be **GRANTED.** Having reconsidered Defendant's Motion for Summary Judgment, filed on December 11, 1991, the response to that motion and the reply to the response, the summary judgment evidence and the applicable law, the Court determines that Defendant's motion for summary judgment should be, and hereby is, **GRANTED.**

This case arises from Plaintiff's belief that Defendant terminated his employment because of Plaintiff's conversations with the government concerning possible wrongdoing at Defendant's predecessor institution. Until his termination on November 16, 1990, Plaintiff was the real estate manager of the Financial Resource Management, Inc. (FRMI) appraisal department. FRMI, an asset management company and wholly-owned subsidiary of Defendant, has serviced the problem assets of the former First RepublicBank Corporation since October of 1988. Plaintiff began work at First National Bank of Dallas, which became InterFirst Bank Dallas in the late 1970s. InterFirst merged with RepublicBank to form First RepublicBank in

1987. On First RepublicBank's failure in 1988, Defendant acquired certain of the failed institution's assets. Plaintiff's employment with the institution continued through these name changes and mergers, culminating in his employment with Defendant. In connection with the failure of First RepublicBank, Plaintiff spoke with the FBI, the Office of the Comptroller of the Currency (OCC), and the FDIC about conduct he believed to be questionable, particularly the use of intentionally inflated real estate appraisals coincidental with false balance sheets issued by Republic-Bank, the lack of due diligence before the merger of InterFirst and RepublicBank Dallas, and retention in employment of bank officers allegedly involved in this conduct.

After the NCNB acquisition, Plaintiff began reporting to Nelse Eubanks, whom he had never met before the acquisition. Eubanks had been with RepublicBank and First RepublicBank, although Plaintiff had neither known him at that time nor known what his job duties were. Beginning in December of 1988 and continuing through Plaintiff's termination, Plaintiff and Eubanks battled over many issues, including Plaintiff's performance reviews, department hiring practices, and Eubanks' lack of concern with whether appraisals had been inflated at the predecessor institution. The conflict escalated with allegations against Plaintiff of physical threats and other obstreperous conduct, which resulted in his being placed on formal probation and in ultimate termination from employment. Plaintiff, however, casts this 2½–year ordeal as an attempt by Eubanks and others to create a sham justification for firing him really in retaliation for his interviews with governmental officials.

▮ Plaintiff brings suit under the Depository Institution Employee Protection Remedy contained in the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). That so-called "whistleblower" statute provides as follows:

No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal Banking agency or to the Attorney General regarding any possible violation of any law or regulation by the depository institution or any director, officer, or employee of the institution.

12 U.S.C. § 1831j(a). To the Court's knowledge, only two published opinions deal with this statute, a district court opinion allowing a plaintiff to assert a claim under it, *Hicks v. Resolution Trust Corp.*, 738 F.Supp. 279 (N.D.Ill.1990), and a circuit court's opinion affirming the *Hicks* court's granting of summary judgment to the defendant because of the plaintiff's culpability in the wrongdoing that he reported. *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 383 (7th Cir.1992). However, the parties agree that FIRREA's whistleblower statute is analogous to anti-retaliation provisions of other employment discrimination statutes and therefore should receive treatment under the standards of proof of those analogous statutes. The Court agrees that the policies underlying these similar statutes warrant parallel treatment here, and other courts faced with like issues have similarly responded. *See, e.g., Wolcott v. Champion Int'l Corp.*, 691 F.Supp. 1052, 1058 (W.D.Mich.1987) (applying the three-step proof analysis to a claim under the Michigan Whistleblowers Protection Act); *Graham v. Special School Dist. No. 1*, 472 N.W.2d 114, 119 n. 7 (Minn.1991) (three-step proof analysis applies to retaliation/whistleblower action under Minnesota statute).

In its motion for summary judgment, Defendant argues that Plaintiff can neither prove a required "but for" causal connection between his whistleblowing and termination, and that Plaintiff cannot demonstrate that Defendant's articulated, nondiscriminatory reasons for terminating Plaintiff are unworthy of credence *and* that they are a mere pretext for discrimination. The Court remembers that this analysis occurs in the conceptual framework of a summary judgment motion.

The movant in a summary judgment context must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th

Cir.1991). The existence of a genuine issue of material fact is determined based on whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986). In other words, "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1504 (5th Cir. 1988). At the summary judgment stage, a district court may not weigh the evidence or determine the truth of the matter but should only decide the existence of a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

The rules allocating the burden of proof guide a court in a summary judgment analysis, *Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991), and that allocation depends on the burden of proof that would obtain at trial. *See Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 190 (5th Cir.1991). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.,* 943 F.2d 589, 591 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune,* 837 F.2d 233, 239 (5th Cir.1988). When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits and other competent evidence,[1] "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," *Rosado v. Deters,* 5 F.3d 119, 122 (5th Cir.1993) (quoting *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)), the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. FED. R.CIV.P. 56(c); *Campbell v. Sonat Offshore Drilling,* 979 F.2d 1115, 1119 (5th Cir.1992).

The legal standards applicable to Title VII discrimination cases contain a dance among shifting burdens of production and proof. The United States Court of Appeals for the Fifth Circuit has applied the rules of proof developed for those cases to Title VII retaliation cases. *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983). And, as noted above, this Court will apply them to FIRREA's whistleblower provision. First, a plaintiff must establish a *prima facie* case, which gives rise to an inference of discrimination. In the retaliation context, a plaintiff does so by proving that he (1) engaged in protected activity, (2) that an adverse employment action occurred, (3) and that there was a causal connection between participation in the protected activity and the adverse employment decision. *Jones v. Flagship Int'l,* 793 F.2d 714, 724 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). These are a modification of the so-called "McDonnell Douglas" factors, after *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which may be modified as necessary to conform to the facts of a particular case. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). Accord-

---

1. *See* FED.R.CIV.P. 56(e).

ingly, courts have applied the factors to a variety of employment-related scenarios. *See, e.g., Barnes v. Exxon Corp.,* 57 Fair Empl.Prac.Cas. (BNA) 1384, 1991 WL 338256 (S.D.Tex.1991) (transfer); *Redd v. Phenix City,* 934 F.2d 1211 (11th Cir.1991) (promotion); *Budd v. City Univ. of New York Baruch College,* 749 F.Supp. 86 (S.D.N.Y.1990) (compensation).

By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him. *Saint Mary's Honor Ctr. v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Next, the burden falls on the defendant to rebut the presumption by producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. *Id.* As the Supreme Court has emphasized, although the burden of production shifts to the defendant, the burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.* The defendant's successfully carrying the burden of production rebuts the *prima facie* case, which at that point drops from the case.[2] *Id.* The plaintiff then has the opportunity to put on evidence that the defendant's proffered reason was not the true one for the employment decision, but in order to show pretext, the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *Id.* at —, 113 S.Ct. at 2752 (emphasis in original).

The Supreme Court's *St. Mary's* analysis did not address proceedings that occurred in the summary judgment arena, though. Not surprisingly, Plaintiff and Defendant have widely differing views on how that decision impacts a summary judgment analysis. On the one hand, Plaintiff argues that the *St. Mary's* holding is quite narrow, merely reversing the Eighth Circuit's holding that proof of the falsity of a defendant's articulated, nondiscriminatory reasons entitles a

plaintiff to judgment as a matter of law. Plaintiff then points to the following language in *St. Mary's*:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is *required.*"

*St. Mary's,* — U.S. at —, 113 S.Ct. at 2749 (citation and footnote omitted). Plaintiff concludes, based on this language, that once he raises a genuine issue of material fact concerning the incredibleness of Defendant's nondiscriminatory reasons for termination, he *without more* is entitled to go to a jury, juxtapose the established elements of the *prima facie* case on the one hand and the mendacious nature of Defendant's nondiscriminatory reasons on the other, and allow the jury to draw a connecting line between those two proofs and unlawful retaliation.

In further support of his position, Plaintiff focuses the Court on a recent Ninth Circuit decision. In *Washington v. Garrett,* 10 F.3d 1421 (9th Cir.1993), the court considered the district court's granting of summary judgment to an employer on a race discrimination claim. Reversing, the court stated that "[i]f a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed." *Id.* at 1433. The court then quotes the same language from the *St. Mary's* decision that Plaintiff offers this Court[3] and concludes as follows:

---

**2.** It is important to note that whether a defendant carries his burden of production involves no credibility assessment, "[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *Saint Mary's Honor Ctr.,* — U.S. at —, 113 S.Ct. at 2748 (em-

phasis in original). In other words, a court is to take the defendant's rebuttal evidence as true. *Id.*

**3.** *See supra* at 1433.

Because, as St. Mary's recognizes, the factfinder in a Title VII case is entitled to infer discrimination from plaintiff's proof of a prima facie case and showing of pretext without anything more, there will always be a question for the factfinder once a plaintiff establishes a prima facie case and raises a genuine issue as to whether the employer's explanation for its action is true. Such a question cannot be resolved on summary judgment.

*Id.* The Ninth Circuit's analysis clearly supports Plaintiff's argument.

The United States Court of Appeals for the Seventh Circuit read *St. Mary's* similarly. In *Anderson v. Baxter Healthcare Corporation*, No. 92–3482, 13 F.3d 1120 (7th Cir.1994), the court considered a claim of age discrimination on which the district court granted summary judgment for the defendant. Although affirming based on the plaintiff's dearth of evidence, the court stated as follows:

In our view, the holding of Hicks is that a plaintiff is not entitled to judgment as a matter of law simply because she proves her prima facie case and shows that the employer's proffered reasons for her discharge are false. The next logical question is whether the plaintiff may prevail, not automatically as a matter of law, but through submission of her case to the ultimate factfinder, under such circumstances.

Hicks answers this question in the affirmative. The Court explicitly states that the plaintiff may prevail in a discrimination case by establishing a prima facie case and by showing that the employer's proffered non-discriminatory reasons for her demotion or discharge are factually false. This "will permit the trier of fact to infer the

ultimate fact of intentional discrimination." "[N]o additional proof of discrimination is required."

*Anderson,* 13 F.3d at 1123 (citations omitted). The court then concludes that " '[i]f the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn. This is the common sense behind McDonnell Douglas.... The point is only that if the inference of improper motive can be drawn, there must be a trial.' " *Id.* at 1124 (quoting *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990)).

On the other hand, Defendant argues that *St. Mary's* increases Plaintiff's burden by forcing him to come forward with evidence at the summary judgment stage of both the falsity of Defendant's nondiscriminatory reasons for termination *and* evidence of discriminatory animus. Language in *St. Mary's* fairly supports this reading. The language on which Plaintiff and the Ninth Circuit rely contains a footnote, which neither of them acknowledge:[4]

Contrary to the dissent's confusion-producing analysis ... there is nothing whatever inconsistent between this statement[5] and our later statements that (1) the plaintiff must show *"both* that the reason was false, *and* that discrimination was the real reason," ... and (2) "it is not enough ... to *dis* believe the employer,".... Even though (as we say here) rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*

*St. Mary's Honor Ctr.,* —— U.S. at —— n. 4, 113 S.Ct. at 2749 n. 4.

In this Court's view, Plaintiff's reading of *St. Mary's* is more faithful to the opinion's

---

4. Although acknowledging the potentially contrary language, the Seventh Circuit dismisses it in a footnote:

As the dissent in Hicks points out, there is language in the Court's opinion that could support a finding that additional evidence of discrimination besides establishment of a prima facie case and rejection of the employer's proffered reasons for the plaintiff's discharge is required to prove intentional discrimination. However, such language is dicta. In rejecting application of this language, we are mindful of

the Supreme Court's admonishment that it is "generally undesirable, where holdings of the Court are not at issue to dissect the sentences of the United States Reports as though they were the United States Code." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2751.

*Anderson,* 13 F.3d at 1124 n. 3, 1994 WL 5698, at *4 n. 3.

5. That is, the statement that rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.

language. Defendant's argument attempts to demonstrate that *St. Mary's* increases a plaintiff's burden rather than merely clarifies the burden-shifting scheme. The Court, however, stated that "[o]nly one unfamiliar with our case-law will be upset by the dissent's alarum that we are today setting aside 'settled precedent'...." *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2750. Contrary to Defendant, this Court agrees with Justice Scalia's observation in footnote four of *St. Mary's* that the Court's language is not inconsistent. Later in the opinion, the court reemphasizes that "[o]nce the defendant 'responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide' *not* (as the dissent would have it) whether that evidence is credible, but 'whether the rejection was discriminatory within the meaning of Title VII.' " *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2753 (quoting *United States Postal Service Bd. v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983)). Lest one misinterpret, the Court restates that "once the defendant has responded to the plaintiff's prima facie case, 'the district court has before it all the evidence it needs to decide' *not* (as the dissent would have it) whether defendant's response is credible, but 'whether the defendant intentionally discriminated against the plaintiff.' " *Id.* at —— ——, 113 S.Ct. at 2753–54 (citation omitted). In the final analysis, "[a]fter the defendant proffers reasons, the plaintiff's burden of showing these reasons are untrue merges with its 'ultimate burden of persuading the court that she has been the victim of intentional discrimination.' " *Fernandez v. Six Flags Corp.*, No. 3:91–CV–1487–D, slip op. at 2–3 (N.D.Tex. Nov. 23, 1993) (Fitzwater, J.) (citation omitted).

█ This Court concedes that the portions of language that tend to compete with one another in the *St. Mary's* decision are not immediately reconcilable. Indeed, the Seventh Circuit had to dismiss one of the competing snippets as dicta in order to make its holding in *Anderson* make sense. Similarly, Justice Souter, dissenting in *St. Mary's*, is puzzled by the majority's "conflicting signals about the scope of its holding in this case." *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2762 (Souter, J., dissenting). However, this Court is persuaded that the proper balance can be struck by allowing the plaintiff who raises a genuine issue of material fact regarding the believability of an employer's legitimate, nondiscriminatory reasons to present his case to the factfinder and by tailoring jury instructions and questions to anchor a finding of pretext necessarily in a finding of unlawful discrimination. Such a procedure neither ignores the problematic of *St. Mary's a la* the Ninth Circuit's *Washington v. Garrett* nor subordinates as dicta what really appears to be a coordinate passage.

█ Even so, having carefully considered the summary judgment evidence,[6] the Court determines that Plaintiff has failed to raise a genuine issue of material fact that Defendant's articulated, nondiscriminatory reasons for Plaintiff's termination are false. Defendant's reasons for termination are not insubstantial. An employer meets its burden of production in employment discrimination cases by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). Defendant produced evidence that Plaintiff received lower than average performance reviews while at NCNB Texas, that he received written warnings and criticisms regarding poor managerial performance and disruptive conduct toward his supervisors and that he was eventually placed on formal disciplinary probation because he threatened his superiors and failed to correct his poor managerial performance and other disruptive conduct. When Plaintiff failed to alter this status quo, he was terminated.

It is undisputed that Defendant and Plaintiff's supervisors knew that he had talked to

---

6. A court need not search the entire record in a case and find it bereft of a genuine issue of material fact before summary judgment may be properly entered. *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir.1989). To the contrary, it is up to the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Id.*

governmental authorities about the alleged wrongdoing. However, the mere fact of Defendant's knowledge is insufficient to raise a genuine issue of material fact concerning the possible falsity of Defendant's reasons for termination. *Cf. Johnson v. Sullivan,* 945 F.2d 976, 981 (7th Cir.1991) (mere knowledge by the defendant of a pending suit does not provide, as a matter of law, that the suit is a motive for retaliatory discharge). Although Plaintiff claims that he had no problems with supervisors before 1987, before the merger, undisputed evidence indicates that he disagreed with his performance appraisals as early as the 1970s. (Ellis Dep. at 519–20, 526–27.) He continued this practice into his conflicts with Eubanks during the 2½ years before his termination disagreeing not only with Eubanks' evaluations, but also evaluations of, for instance, Ted Prophet. Plaintiff's own subjective, conclusory disagreements with his supervisors' assessments of his performance would not enable a reasonable jury to return a verdict for him on this issue. Much of Plaintiff's evidence paints Eubanks as ineffective, aloof and unknown to his subordinates. The Court fails to understand how such characterizations buttress his argument that Defendant's reasons for terminating him are false.

Plaintiff also takes issue with the way he was terminated. He claims that he did nothing to violate the terms of his formal probation and that Defendant failed to follow its own procedures in his termination. Specifically, Plaintiff alleges that Defendant's policy required a four-step process: coaching and counseling; written warning; formal probation; and termination. However, Defendant demonstrates, and Plaintiff does not dispute, that his superiors "coached and counseled" him, although he might not use those words, in many conversations and memoranda and that they even gave him three options in light of Eubanks' perception of physical threats and on-going conflict: (1) To seek new employment, (2) to transfer to the asset management group as Asset Manager III or (3) to maintain his present position with little hope for long-term employment. Plaintiff chose the final option. None of this goes any further toward suggesting that Defendant's

reasons for discharge are unworthy of credence, though.

Plaintiff's best argument, on further interrogation—although not much further—equally fails. Plaintiff states that "Eubanks' attitude about Plaintiff having conversations with any governmental regulators is borne out by a memo he issued in late 1988 in which he reprimanded Plaintiff for speaking to the FDIC." (Pl.'s Resp.Def.'s Mot. Summ.J. at 15–16.) Although the use of "issued" in Plaintiff's brief suggests that Eubanks sent the memo out like a press release, the instrument states on its face that he "issued" it to the file. One wonders how Plaintiff was reprimanded in a memo not addressed to him. In any event, the document memorializes a conversation that Eubanks had with Plaintiff on a variety of subjects. It addresses the point that Plaintiff finds supportive as follows:

> John advised me that he had had a chance to make "our" pitch to the FDIC when Richard LaSance and Scott Emerson had brought FDIC representatives to tour his area that morning. After finishing changes to personnel actions which was the reason for the meeting with John, I came back to his comment and reminded him of our previous conversation wherein I had acknowledged his desire to pitch for in-house appraisals and had told him I would determine whether we would be allowed to do so. John was also advised that if I had taken responsibility for pursuing any action that I did not expect him to take it upon himself to displace me in that responsibility.

(App.Pl.'s Resp., Ellis Aff., Ex. A.) Later in the memo, Eubanks returns to the issue:

> Mr. Ellis had become somewhat animated in his response to the comments regarding his contact with the FDIC even though I explained that the issue was not his staff's ability or lack thereof but was an issue of his interceding in an activity which I had agreed to undertake. The other issues were discussed more calmly.

(*Id.*) The actual text of the memo yields the conclusion that Eubanks took issue not with Plaintiff speaking to the FDIC, or any other governmental agency, but rather with Plain-

tiff's usurping Eubanks' managerial authority. The fact that the conversation and memorializing memo reference the FDIC seems completely coincidental: The conversation Plaintiff wanted to have concerned the use of in-house appraisers rather than external appraisers. Neither Plaintiff nor Eubanks make any mention of whistleblowing or wrongdoing that might be reportable to authorities. This memo does nothing to raise a genuine issue of material fact regarding falsity of Defendant's reasons for termination.

Taking an all-inclusive look at Plaintiff's evidence, the Court sees only that Plaintiff talked to the FBI and others, that Plaintiff disagreed vehemently and, sometimes, vociferously with his superiors on such things as his performance reviews, and that Plaintiff believed that there was a conspiracy to oust him from the bank because of his self-styled whistleblowing. In Plaintiff's mind, all this adds up to retaliatory discharge, which happened 2½ years after his conversations with the government, which apparently resulted in no criminal action against those in the alleged conspiracy. The Court concludes, though, that the few facts coupled with Plaintiff's conclusions, of which he offers only subjective evidence, do not carry his summary judgment burden concerning the believability of Defendant's articulated, nondiscriminatory reasons for its action.

For the foregoing reasons, the Court concludes that Plaintiff fails to raise a genuine issue of material fact concerning whether Defendant's nondiscriminatory reasons for Plaintiff's termination are unworthy of credence. Defendant has thus shown itself entitled to summary judgment as a matter of law. On these facts, were the law otherwise, it would abrogate the employment at will doctrine.[7] *Cf. Bienkowski,* 851 F.2d at 1508 n. 6 ("There must be some proof that age motivated the employer's action, otherwise the law has been converted from one preventing discrimination because of age to one ensuring dismissals only for 'just cause' to all people over 40.") An employee would merely need to accept employment, blow the whistle

on questionable conduct, real or imagined, and simply claim King's X, even years in the future, when the employer decided to make an adverse employment decision because of the employee's performance, for instance. The law provides an employee no such guarantee of employment.

In light of the Court's conclusion on the instant issue, it is unnecessary to address Defendant's "but for" cause issue.

**SO ORDERED.**

---

7. This doctrine provides that an employer may discharge an employee with or without cause unless the employee is a party to a contractual provision to the contrary. *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888).