Sarah DAILEY, Plaintiff,

v.

JOHNSON & JOHNSON CONSUMER PRODUCTS, INC., Defendants.

Civ. A. No. 3:93–CV–473–X.

United States District Court,
N.D. Texas,
Dallas Division.

May 11, 1994.

Stephen Fred Fink, Elizabeth A. Schartz, Thompson & Knight, Dallas, TX, for Johnson & Johnson Consumer Products, Inc.

Courtenay Lee Bass, pro se.

### MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

NOW before the Court are the Motion of Defendant Johnson & Johnson Consumer Products, Inc. for Summary Judgment, filed on April 1, 1994, the response to that motion and the reply to the response. Having considered these filed materials, the summary judgment evidence and the applicable law, the Court concludes that Defendant's motion should be, and hereby is, **GRANTED.**

This is an employment discrimination suit. Plaintiff became Defendant's employee in 1982 at the age of approximately 40. She was terminated in a reduction in force in 1992 at the age of 50. Defendant claims that it decided in 1992 to eliminate all but two of its part-time sales representative positions in the Dallas/Fort Worth area and instead contract with a broker to handle certain sales. Defendant purportedly relied on five criteria to determine who would fill the remaining two positions: (1) Willingness to work 24 hours per week, (2) past performance ratings, (3) previous experience and potential to handle the responsibility of servicing and selling to direct-buying accounts, (4) company service and (5) geographic location to direct-buying accounts in the market. Defendant also claims that it required that the positions be filled with one candidate living in the western part of the market and the other living in the eastern part. The central area of the D/FW market remained filled by a former employee of Defendant who, after retirement, worked on a contract basis. Of eight of the existing D/FW part-time reps, three were automatically eliminated because they were unwilling to work 24 hours per week. Of the remaining five, the decision maker, Jim Crotty, age 42, chose Louise Gallik, age 48, and Rita Blanton, age 38. Plaintiff does not quarrel with Defendant's selection of Gallik. However, Plaintiff claims that she should have been selected over Blanton. Plaintiff contends that her performance was better than Blanton's, that she had more relevant experience, that she had a longer tenure with the company and that she was geographically better suited to Defendant's needs than Blanton.

Plaintiff alleges that she was eliminated from employment not for the reasons that Defendant offers, but instead because of her age. Consequently, she sues under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA). After recounting the standards under which a court considers a summary judgment motion, the Court considers Defendant's motion in light of those standards.

The movant in a summary judgment context must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Slaughter v. Southern Talc Co.,* 949 F.2d 167, 170 (5th Cir.1991). The existence of a genuine issue of material fact is determined based on whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986). In other words, "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bienkowski v. American*

*Airlines, Inc.,* 851 F.2d 1503, 1504 (5th Cir. 1988). At the summary judgment stage, a district court may not weigh the evidence or determine the truth of the matter but should only decide the existence of a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

■ The rules allocating the burden of proof guide a court in a summary judgment analysis, *Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991), and that allocation depends on the burden of proof that would apply at trial. *See Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 150 (5th Cir. 1991). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.,* 943 F.2d 589, 591 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune,* 837 F.2d 233, 239 (5th Cir.1988). When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits and other competent evidence,[1] "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

■ Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," *Rosado v. Deters,* 5 F.3d 119, 122 (5th Cir.1993) (quoting *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)), the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. FED.R.CIV.P. 56(c); *Campbell v. Sonat Offshore Drilling,* 979 F.2d 1115, 1119 (5th Cir.1992).

■ The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The legal standards applicable to ADEA cases contain a dance among shifting burdens of production and proof. First, a plaintiff must establish a *prima facie* case, which gives rise to an inference of discrimination. In the age discrimination context, a plaintiff establishes such a case by demonstrating that (1) he was discharged, (2) was qualified for the position, (3) was within the protected class at the time of discharge and (4) was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger or (iii) otherwise discharged because of his age. *Bodenheimer v. PPG Indus.,* 5 F.3d 955, 957 (5th Cir.1993). These are a modification of the so-called "McDonnell Douglas" factors, after *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which may be modified as necessary to conform to the facts of a particular case. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). Accordingly, courts have applied the factors to a variety of employment-related scenarios. *See, e.g., Barnes v. Exxon Corp.,* 57 Fair Empl. Prac. Cas. (BNA) 1384, 1991 WL 338256 (S.D.Tex.1991) (transfer); *Redd v. Phenix City,* 934 F.2d 1211 (11th Cir.1991) (promotion); *Budd v. City Univ. of New York Baruch College,* 749 F.Supp. 86 (S.D.N.Y.1990) (compensation).

■ By establishing a *prima facie* case, the plaintiff creates a rebuttable pre-

---

1. *See* FED.R.CIV.P. 56(e).

sumption that the employer unlawfully discriminated against him. *Saint Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Next, the burden falls on the defendant to rebut the presumption by producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. *Id.* As the Supreme Court has emphasized, although the burden of production shifts to the defendant, the burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.* An employer meets is burden of production in employment discrimination cases by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir. 1991). The defendant's successfully carrying the burden of production rebuts the *prima facie* case, which at that point drops from the case.[2] *Saint Mary's,* —— U.S. at ——, 113 S.Ct. at 2747. The plaintiff then has the opportunity to put on evidence that the defendant's proffered reason was not the true one for the employment decision, but in order to show pretext, the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *Id.* at ——, 113 S.Ct. at 2752 (emphasis in original).

■ Defendant does not dispute that Plaintiff has established a *prima facie* case. Likewise, Plaintiff does not dispute that Defendant has articulated legitimate, nondiscriminatory reasons for Plaintiff's discharge. The analysis then shifts to the third stage of the McDonnell Douglas factors, the issue of pretext. The Court must determine whether Plaintiff has tendered factual evidence that would lead a jury to the reasonable conclusion that Defendant's reasons are a pretext for age discrimination. *Bodenheimer,* 5 F.3d at 958. In particular, Plaintiff must produce sufficient evidence to show that Defendant's reasons were pretextual *for age discrimination. Id.*

Under the criteria that Defendant used to evaluate candidates for the two part-time positions, Plaintiff and the successful candidate, Rita Blanton, were similar in many regards. On balance, though, Defendant determined that Blanton was more qualified. Although both were willing to work 24 hours per week, Plaintiff had the edge in company tenure. Yet Defendant concluded that Blanton's performance record outshined Plaintiff's. Blanton ranked first of the five available candidates in the most recent performance evaluation and first out of all of the region's fifty part-time retail sales reps. Also significant to the decision was that Blanton lived in Rowlett, in the eastern part of the D/FW market area.

Plaintiff offers her declaration to show pretext. For example, Plaintiff attacks the evaluations on which Defendant relied in part to hire Blanton over her:

> They were done for the period from January–June 1992. To fully understand the Exhibit you must look at the grades that both Rita Blanton and I received and compare them to the Key Objectives that support these grades. Under Distributions, I accomplished 229 distributions. Rita accomplished only 141. Under Shelf Management, we both received a rating of 100%. Under Display/Cross Merchandising, I accomplished 1 per call. Rita accomplished .3 per call. Under Account Coverage, I made 335 actual calls; whereas, Rita made only 141 calls. Mine averaged out to more than 5.2 per day. Rita's averaged less than half of that. Under Innovation in Action, we both accomplished the goal set out for us. Under Administration/Communication, both of our reports were accurate and on time. However, although I did more display and cross merchandising than Rita, she got a 17 out of 20 and I got a 16. Although I far outperformed her on Account Coverages, she got a 15 out of 15 and I got a 14. Although I outperformed her on Cross Merchandising,

---

**2.** It is important to note that whether a defendant carries his burden of production involves no credibility assessment, "[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *Saint Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2748 (emphasis in original). In other words, a court is to take the defendant's rebuttal evidence as true. *Id.*

I got an 8 out of 10 and she got a 9 out of 10. Although both of our reports were accurate and on time, they gave her a 10 out of 10 and gave me a 7 out of 10. If I had been graded equally to Rita for performance, I would have done better on the January–June report than Rita did.

(Decl. Sarah Dailey, at ¶ 7.) The evaluations that Plaintiff compares were conducted by the same evaluator, Linda Tiller, for this evaluation period. (*See* Mot.Def., Undisputed Facts, at ¶ 14.) Defendant based its decision not only on this evaluation but also on other, prior evaluations apparently conducted by a different evaluator. However, Defendant claims that Crotty's decision was based in part on Tiller's recommendation. (*Id.* at ¶ 6.)

The differences that Plaintiff points out between the numbers she received in the Key Objectives portion of her evaluation and the points she was given in the evaluation criteria portion of her evaluation do not demonstrate her subjective, conclusory allegations that she was unfairly graded. On examination of the evaluations, it becomes apparent that the numbers Plaintiff received in the Key Objectives are applied backward to her in comparison to the same application to Blanton. Unfortunately for Plaintiff, this evidence goes only to the issue of whether the Defendant's articulated nondiscriminatory reasons are false; it does not go to the issue of pretext *for age discrimination.*

Plaintiff's evidence of age discrimination is conclusory. She states that "I knew for some time before I was terminated that my job was in trouble because of my age." (Decl. Sarah Dailey, at ¶ 3.) She also maintains that her age entitled her to greater pension benefits and that consequently she was terminated because Defendant desired to reduce its costs. (*See* Dep. Sarah Dailey, at 48.) [3] There is not much, if anything, else to discharge this portion of Plaintiff's burden. The amount of evidence Plaintiff has produced that raises a fact issue concerning the falseness of Defendant's reasons would permit Plaintiff to go to a jury in, for instance, the Seventh Circuit, *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir.1994) or the Ninth Circuit, *Washington v. Garrett,* 10 F.3d 1421 (9th Cir.1993).

As the Seventh Circuit notes,

The [*Saint Mary's* ] Court explicitly states that the plaintiff may prevail in a discrimination case by establishing a prima facie case and by showing that the employer's proffered non-discriminatory reasons for her demotion or discharge are factually false. This "will permit the trier of fact to infer the ultimate fact of intentional discrimination." *"[N]o additional proof of discrimination is required."*

*Anderson,* 13 F.3d at 1123 (citations omitted) (emphasis added). However, this Court sits within the Fifth Circuit, and according to *Bodenheimer* the plaintiff must raise in the summary judgment evidence an issue regarding pretext *for age discrimination.* [4]

Of the relationship between the *Saint Mary's* decision and a summary judgment motion, this Court has stated the following:

[T]his Court is persuaded that the proper balance can be struck by allowing the plaintiff who raises a genuine issue of material fact regarding the believability of an

---

3. The Supreme Court has recently addressed a pertinent issue relating to this portion of Plaintiff's claim. The Court stated that

The courts of appeals repeatedly have faced the question whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age. We now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age.

*Hazen Paper Co. v. Biggins,* —— U.S. ——, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993) (citations omitted).

4. There, the Fifth Circuit stated the following:

We recognize that *St. Mary's* did not involve review of a summary judgment, whereas this case does. The case nonetheless is controlling as to what showing Bodenheimer must make to avoid summary judgment. In particular, because Bodenheimer would be required to prove at trial, through a preponderance of the evidence, that PPG's proffered reasons are a pretext for age discrimination, he must now produce sufficient evidence to establish that PPG's reasons were pretexts *for age discrimination.* We find that he did not.

*Bodenheimer,* 5 F.3d at 958 (emphasis in original).

employer's legitimate, nondiscriminatory reasons to present his case to the factfinder and by tailoring jury instructions and questions to anchor a finding of pretext necessarily in a finding of unlawful discrimination.

*Ellis v. NCNB Texas Nat'l Bank*, 842 F.Supp. 243, 249 (N.D.Tex.1994). It seems that *Ellis* conflicts with the holding of *Bodenheimer*. Yet it appears to the Court in light of *Bodenheimer* that absent a defendant stupid enough to make an outright admission of discrimination or a pattern of discrimination so obvious as to constitute evidence of discrimination—both of which are absent here—a plaintiff will be unable to survive summary judgment.[5] But this Court is clearly bound by *Bodenheimer*.

For the foregoing reasons, Defendant's motion is granted.

**SO ORDERED.**

---

5. "Unless the employer is a latter-day George Washington, employment discrimination is as difficult to prove as who chopped down the cherry tree. Employers are rarely so cooperative as to include a notation in the personnel file, 'fired due to age,' or to inform a dismissed employee candidly that he is too old for the job" *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 638 (5th Cir.1985) (citation omitted).