**Karen SORLUCCO, Plaintiff–Appellant,**

v.

**NEW YORK CITY POLICE DEPARTMENT, Defendant–Appellee.**

**No. 1235, Docket 89–7225.**

United States Court of Appeals, Second Circuit.

Argued June 15, 1989.

Decided Oct. 16, 1989.

Kathleen A. Sullivan, BLS Legal Services Corp., Federal Litigation Program, Brooklyn, New York (Andrea Sharrin and Jeremy Solomon, Legal Interns, BLS Legal Services Corp., Federal Litigation Program, Brooklyn, New York, of counsel), for plaintiff-appellant.

John Hogrogian, New York City (Peter L. Zimroth, Corp. Counsel of the City of New York, and Pamela Seider Dolgow, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, VAN GRAAFEILAND and PRATT, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Karen Sorlucco appeals from a summary judgment of the United States District Court for the Southern District of New York (Mukasey, J.) dismissing her claim that she was unlawfully discharged and deprived of her constitutional rights by the New York City Police Department (NYPD) in violation of 42 U.S.C. §§ 2000e *et seq.*, 1983 and 1985. We affirm dismissal of the section 1985 claim and reverse and remand as to the rest.

The NYPD hired Sorlucco as a police officer in January 1982. After graduating from the Police Academy in June 1982, Sorlucco served as a police officer on probationary status until January 1983. On January 17, 1983, Sorlucco reported to the Nassau County Police Department (NCPD) that on January 7, 1983 an unidentified male had sexually assaulted her at her home. When the NYPD was informed of the alleged assault, it placed Sorlucco on "modified assignment", which involves the performance of nonenforcement duties pending determination of the officer's fitness to perform full duties. Sorlucco contends that this was a disciplinary action and points to some evidence in support of this contention. The NYPD argues that it was not disciplinary and refers to supporting evidence. Because of references to "Serious Misconduct" and "charges and specifications" contained in the "assignment" papers, we view this as a disputed issue of fact.

On January 21, 1983, Sorlucco returned to the NCPD and recanted her initial account of the sexual assault. According to plaintiff's second account, the assault occurred during the night of January 12 and the morning of January 13. Sorlucco now claimed that her attacker was New York

City police officer John Mielko. According to Sorlucco, she invited Mielko to her home. Once there, Mielko took Sorlucco's service revolver, aimed it at her head and sodomized her, after firing a bullet through her bed. Sorlucco further alleged that Mielko threatened to kill her if she reported the attack.

Sorlucco claims she originally misstated the facts of the assault because she feared Mielko and because she was disoriented by post-rape trauma and an unrelated head injury. Nonetheless, on February 2, 1983, Sorlucco failed a polygraph test administered by the police regarding the incident. Shortly thereafter, Sorlucco signed a statement prepared by the NCPD indicating that she desired no further police action regarding her alleged rape. Sorlucco challenges the efficacy of the polygraph test and claims she later passed a second, privately administered polygraph test regarding the assault. Sorlucco also contends that she was pressured into signing the withdrawal of charges because officers of the NCPD told her that the NYPD would fire her if she did not sign it. Twelve days later, after finding that Sorlucco was unable to perform full duty, an NYPD staff psychologist placed her on restricted duty.

On May 23, 1983 the Nassau County Prosecutor's Office filed criminal charges against Sorlucco for making false statements and obstructing government administration. In response to the criminal charges, the NYPD suspended Sorlucco without pay and administratively charged her with conduct unbecoming an officer, making false statements, and failing to safeguard her firearm. Based on these departmental charges, the NYPD terminated Sorlucco's employment on July 15, 1983.

Following receipt by the Commissioner of the NYPD of a letter from the New York City Advisory Task Force on Rape complaining of the NYPD's "unduly harsh" treatment of Sorlucco and its failure to investigate Mielko, Captain LaCava, who had been assigned in February to conduct the NYPD's internal investigation of the case, interviewed Mielko for the first and only time on September 16, 1983. Although Mielko's version of the facts left some evidentiary questions unanswered, LaCava decided to end the investigation in late December. In October 1987, a New York Appellate Division panel dismissed the criminal charges against Sorlucco which formed the basis for the departmental charges and ultimately for Sorlucco's termination.

Sorlucco alleges that, in terminating her employment, the NYPD discriminated against her on the basis of her sex. In addition, Sorlucco alleges that the NYPD violated 42 U.S.C. § 1985 by conspiring with the NCPD to deprive her of her right to pursue charges of sexual assault against Mielko. The district court concluded that the defendant's discharge of Sorlucco was reasonable and that Sorlucco presented no evidence to show that the defendant's expressed reasons for discharging her were a pretext for gender discrimination. The court also dismissed Sorlucco's conspiracy claim as factually insufficient. Although we agree that Sorlucco's claim of conspiracy was properly dismissed, we believe that her charge of discrimination was not.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment is inappropriate if the case involves any material factual issues that a trier of fact reasonably could resolve in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making its determination, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

The Supreme Court has outlined a three-step analysis of factual issues in Title VII claims. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). By analogy, the same analysis applies to claims under section 1983. *See Huntley v. Community School Bd.*, 543 F.2d 979, 983 nn. 5 & 6 (2d Cir.1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977); *see also Knight v. Nassau County Civil Serv. Comm'n*, 649 F.2d 157, 161–62 (2d Cir.), *cert denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981) (failure to meet burden of proof in Title VII claim constitutes failure to meet burden of proof in section 1983 claim).

In a claim arising under Title VII or section 1983, a plaintiff such as Sorlucco has the initial burden of establishing a prima facie case of discrimination. She may satisfy this burden by showing that she is a member of a protected class, that she is qualified for the job in question, that the employer rejected or discharged her despite her qualifications and that the employer sought other applicants for the plaintiff's position. *McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to state a legitimate reason for the termination. *Id.* After the defendant has established a legitimate reason for the discharge, the burden shifts back to the plaintiff to show that the defendant's stated reason for the discharge is pretextual. *Id.* at 804, 93 S.Ct. at 1825. In other words, the plaintiff ultimately must show that the apparently valid reason the defendant has advanced for discharging the plaintiff was not the true reason, but was a coverup for a discriminatory decision. *Burdine, supra*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95.

▮ In the instant case, the district court found, and both parties agree, that Sorlucco made out a prima facie case of discrimination. Similarly, Sorlucco concedes that the NYPD has advanced a legitimate reason for her discharge. Consequently, the burden is on Sorlucco to establish that the stated reason for the discharge is pretextual. At the summary judgment level, however, the plaintiff does not have to prove that the reason is pretextual. The plaintiff

may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of discrimination. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898–99 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has her] day in court despite the unavailability of direct evidence.'" *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979)).

▮ Sorlucco has presented sufficient evidence to create a triable issue of discrimination. As she contends, a jury might find that the NYPD discharged her in retaliation for making charges against her fellow officer. She has presented evidence to the effect that the defendant disciplined her immediately after she reported the rape and that the defendant fired her for reasons arising out of her report of the assault. Sorlucco's major contention, however, appears to be that she was treated differently from Officer Mielko, who was not even questioned about the alleged rape until eight months after it occurred. Thereafter, his name never was mentioned in internal police department memoranda describing the incident, and no disciplinary action of any sort was taken against him. This alleged whitewash took place despite the fact that, although Mielko denied raping Sorlucco, he admitted spending the night with her, and, during this intimate sojourn, someone concededly shot a bullet through the mattress of Sorlucco's bed using her gun. Moreover, if, as the NYPD charged and the district court found, Sorlucco violated police regulations in permitting the gun to get out of her possession, Mielko, if he was the rapist, was more grossly at fault for using it.

Although, on the record before us, we are not prepared to hold that Mielko was guilty of rape, we likewise are not prepared to hold that the New York City Police Department's handling of Sorlucco's allegations of rape was nondiscriminatory. The

district court's reaction should have been the same. It is for a jury to determine whether Sorlucco's charges against Mielko were true and, if so, whether the discipline meted out to her was unlawfully disparate to that received by her male fellow officer. In making its determination, the jury may take into consideration the fact that plaintiff was a probationary officer and Mielko was a tenured policeman. We do not believe this difference in their status should be dispositive in the instant case as a matter of law. Drawing all evidentiary inferences in favor of the plaintiff, we conclude that plaintiff may well be able to prove retaliatory intent or disparate treatment on the part of the NYPD in violation of Title VII and section 1983. Accordingly, summary judgment on plaintiff's Title VII and section 1983 claims was inappropriate.

To establish a cause of action under 42 U.S.C. § 1985, however, the plaintiff must show that the defendant conspired with another to deprive the plaintiff, or a class of which plaintiff was a member, of equal protection of the laws or of equal privileges and immunities under the laws. The gravamen of plaintiff's claim in the instant case is that the NYPD conspired with the NCPD "to impede just resolution of Plaintiff's charges of sexual assault." The district court found that "not one document or affidavit submitted on this motion contains even the slightest hint of impropriety" in the contacts between the two police departments. We agree.

We affirm that portion of the judgment below which dismisses plaintiff's claim under 42 U.S.C. § 1985. We reverse the dismissal of plaintiff's remaining claims and remand for further proceedings consistent with this opinion.