Patricia BEATTIE, Plaintiff,

v.

FARNSWORTH MIDDLE SCHOOL, the Guilderland Central School District, Blaise Salerno, Deborah Marcil, Roger Levinthal, Nancy Davis, Peggy Donovan, and William Adams, in their Individual and Representative Capacities as Aiders and Abettors, Defendants.

No. 98–CV–0399 (LEK/DRH).

United States District Court, N.D. New York.

Dec. 9, 1998.

Cusick, Hacker, & Murphy, LLP (John E. Higgins, of counsel), Latham, NY, for Plaintiff.

Hancock & Easterbrook, LLP (Renee L. James, of counsel), Syracuse, NY, for Defendants.

*Memorandum–Decision and Order*

KAHN, District Judge.

In this sex discrimination action brought under federal and state law, Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The critical issues presented are whether Defendants' alleged conduct constitutes a compelling showing of a continuing violation of Title VII of the Civil Rights Act of 1964 for the purposes of extending any applicable statute of limitations and whether a viable claim for which relief can be granted has been stated. This Court holds that although for purposes of Plaintiff's Title VII sexual harassment claim, facts sufficient to make a compelling showing of a continuing violation have not been alleged, other valid claims for which relief can be granted have been stated. For the reasons stated below, Defendants' motion is GRANTED in part, and DENIED in part.

BACKGROUND

Since September 1987, Plaintiff Patricia Beattie has worked part-time for the Guilderland Central School District (the "District") as a paraprofessional, more commonly known as a teacher's aide. During the period of time in question, her

duties included work as a Principal's Office assistant and general monitor in the cafeteria and hallways of Farnsworth Middle School ("Farnsworth").

On January 16, 1996, the Plaintiff claims she reported to Farnsworth's then Acting Principal, Defendant Deborah Marcil ("Marcil"), an allegation of sexual harassment directed against Farnsworth art teacher, Defendant Roger Levinthal ("Levinthal"). More than one year later on March 18, 1997, Plaintiff was issued a formal reprimand by the District pursuant to a counter-allegation of sexual harassment directed against the Plaintiff by Levinthal, which she claims was without merit and in retaliation for her allegations detailed in the pending Complaint. The Plaintiff contends that prior to the reprimand in her ten years of employment with the District, she had never been subject to employer sanction. As a result of the reprimand, District employees who directly participated in the counter-allegation investigation, including Levinthal, Marcil, Farnsworth art teachers Nancy Davis ("Davis") and Peggy Donovan ("Donovan"), District Human Resources Administrator William Adams ("Adams"), and Superintendent of Schools Blaise Salerno ("Salerno"), are alleged to have conspired and retaliated against the Plaintiff for her initial complaint.[1]

The Plaintiff claims that from January 1995 through some unidentified time in 1997, she was "sexually harassed, followed, leered at, stared at, kissed, inappropriately touched, intimidated, retaliated against, and humiliated" by Defendant Levinthal. *Comp.* at ¶ 22. Plaintiff contends that between January and July 1995, Levinthal made repeated unwelcome comments of attraction to her. *Id.*, at ¶ 27. More specifically, the Plaintiff alleges that while

working in Farnsworth's cafeteria on January 12, 1995, Levinthal threw his arms around her and forcibly kissed her on the mouth in front of at least two teachers and an unnumbered group of students. Less than one month later on February 8, 1995, Plaintiff alleges Levinthal repeated his conduct of January 12th, hugging and kissing her in Farnsworth's cafeteria. Once again, on June 21, 1995, Plaintiff contends Levinthal hugged and forcibly kissed her as she entered Farnsworth's cafeteria in furtherance of her assigned duties. *Id.*, at ¶¶ 23—27. Following this third incident, and unlike after the January and February 1995 incidents, the Plaintiff verbally communicated to Levinthal that his behavior was unwelcome. *Id.*, at ¶ 27. ("Stop. No more hugs. No more kisses.").

Plaintiff contends that in the wake of a January 16, 1996 meeting with then Acting Principal Marcil regarding Levinthal's conduct, no action was undertaken by Farnsworth or the District to remedy these past instances of alleged harassment. Instead at the January 16, 1996 meeting, Plaintiff claims Marcil merely responded to the allegation with a statement of her personal friendship with Levinthal and notation of his family status as a husband and father.

Approximately six months later, on June 6, 1996, Plaintiff contends she was approached by Levinthal regarding an upcoming class trip to Riverside Amusement Park for which both apparently were slated to work. Levinthal allegedly expressed his discomfort with the prospect that the two would be on the trip together, because "it bothered him when the Plaintiff was around." *Comp.* at ¶ 32. In response, Plaintiff withdrew from participation in the Riverside trip. Eight days later, on June 14, 1996 and apparently just prior to the

---

**1.** Plaintiff does not contest Defendant Adams' motion to dismiss the pending action against

him individually and in his representative capacity.

close of the academic year, Farnsworth Principal Penny Heath restricted the Plaintiff's general hallway monitoring duties, informing her that she was not to monitor the hallway where Defendant Levinthal's classroom was located. Two weeks later, Plaintiff, her attorney, and a union representative met with Marcil and Adams regarding Plaintiff's sexual harassment allegations directed against Levinthal. No mention was made at this late June 1996 meeting of Levinthal's counter-allegation of sexual harassment directed against the Plaintiff.

At the beginning of the following academic year, September 1996, the Plaintiff apparently was informed by another Acting Principal, Arnold Rothstein, that Levinthal was prohibited from entering the Farnsworth cafeteria during Plaintiff's work hours unless accompanied by a supervisor. At some unspecified time within the next three months, Rothstein was replaced as Acting Principal, with Deborah Marcil once again assuming the position. According to the Plaintiff, Levinthal's unsupervised presence in the cafeteria soon thereafter resumed. During this time, Levinthal is alleged to have engaged in unwanted staring at the Plaintiff. *Comp.* at ¶¶ 37, 47. The staring apparently was of sufficient continuity and severity as to prompt the Plaintiff to lodge another internal complaint in February 1997, this time with Adams and Salerno. *Comp.* at ¶ 47.

On September 5, 1996, the Plaintiff was interviewed by an attorney hired by the District regarding Levinthal's counter-allegation of sexual harassment directed against her. The Plaintiff claims she was asked at that meeting to comment on the substance of a June 4, 1996 letter from Marcil to Adams regarding Levinthal's counter-allegation. Presentation of the letter thus informed the Plaintiff, for what she claims to be the first time, of Levinthal's counter-allegation. In February 1997, the Plaintiff learned of further interviews conducted by the District into Levinthal's counter-allegation. On March 10, 1997, Plaintiff was orally informed by Superintendent Salerno that the District had found her allegations to be without merit and Levinthal's counter-allegation to be with merit. On March 17, 1997, Plaintiff filed a formal complaint with the Equal Employment Opportunities Commission ("EEOC"). One day later, she received a formal reprimand from the District. On March 9, 1998, this Complaint was filed.[2]

Plaintiff alleges violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, 42 U.S.C. §§ 1983 & 1985, and Section 290 et seq. of the New York State Rights Law ("HRL").[3] Defendants contend facts asserted are time-barred from consideration and that the charged conduct does not constitute sexual harassment, retaliation, or a deprivation of constitutional rights.

## DISCUSSION

Because this Court's assessment of the pending motion is limited to factual assertions and materials enumerated in the Complaint, it is disposed of as a Rule 12(b)(6) motion and is not considered as if a Rule 56 motion for summary judgment. *See* F.R. Civ. P. 12(b)(6); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). "When deciding a [Rule 12(b)(6) ] motion to dismiss for failure to state a claim upon which relief

---

**2.** On the basis of Defense counsel's representations that Farnsworth Middle School is not a legal entity, Plaintiff has agreed to withdraw all claims against Farnsworth. *Trans.* at 7.

**3.** Plaintiff does not contest Defendant's motion to dismiss her claims under the Age Discrimination in Employment Act of 1967.

might be granted, the court must accept the material facts alleged in the complaint as true" and afford the non-moving party all favorable inferences therefrom. *See Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995) (internal citations and quotations omitted); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992) (citing *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991)). A court should dismiss pursuant to a Rule 12(b)(6) motion only where it is clear that a plaintiff cannot establish any set of facts sufficient to sustain a claim. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *see also Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986). With this standard of review in mind, the pending motion is considered.

## I. Sexual Harassment Claims

■ Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In addition to prohibiting traditional sex discrimination, Title VII has been interpreted to proscribe sexual conduct "requiring people to work in a discriminatory hostile or abusive environment." *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

## A. Statute of Limitations

■ From the date a complaint is filed with the EEOC, there is a 300 day window of time through which Title VII claims are viewed.[4] *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). Acts taking place more than 300 days before the date of filing are ordinarily not to be considered. *Id.* Here, Plaintiff filed her charges with the EEOC on March 17, 1997. Thus, only events alleged to have occurred after May 21, 1996 are to be considered for the purposes of the pending motion.[5]

■ Plaintiff relies, however, on a "continuing violation" theory to extend this Court's review to alleged events occurring more than a full year prior to May 21, 1996. "[C]laims of discriminatory acts committed under an ongoing policy of discrimination" are reviewable "even if those acts standing alone, would have been barred by the statute of limitations." *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) (quoting *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998)). "Where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy," a continuing violation may be found. *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994).

■ Although the continuing violation exception is recognized in each circuit, it is considered "disfavored" in the Second Cir-

---

**4.** [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, [an EEOC complaint under this section] shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged

unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1).

**5.** A three-year statute of limitations attaches to Plaintiff's corresponding New York Human Rights Law § 296(1) claims. *See* N.Y. CPLR § 214(2). Thus, for Plaintiff's HRL sexual harassment and retaliation claims, the full ambit of her allegations are to be considered in determining whether a cause of action has been stated for which relief might be granted.

cuit and only to be applied "upon a showing of compelling circumstances." *See, e.g., Rivera v. Prudential Insurance Co.,* 1996 WL 637555, *6 (N.D.N.Y. Oct.21, 1996); *Lloyd v. WABC–TV,* 879 F.Supp. 394, 399 (S.D.N.Y.1995); *Blesedell v. Mobil Oil Corp.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989). "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation" and are not to be considered if occurring beyond the 300 day statute of limitations. *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993).

Several circuits employ a three-part test first articulated in *Berry v. Board of Supervisors of Louisiana State University,* 715 F.2d 971 (5th Cir.1983), to determine whether a continuing violation is present. *See, e.g., West v. Philadelphia Electric, Co.,* 45 F.3d 744, 754 (3d Cir.1995); *Mascheroni v. Board of Regents of University of California,* 28 F.3d 1554, 1561 (10th Cir.1994); *Selan v. Kiley,* 969 F.2d 560, 565 (7th Cir.1992); *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793, 800 (11th Cir.1988). While the Second Circuit has yet to adopt the *Berry* test, it serves as a trenchant tool in analyzing the pending case. *Berry* asks:

> Do the alleged acts involve the same type of discrimination . . . . Are the alleged acts recurring (e.g. a biweekly paycheck) or more in the nature of an isolated employment decision . . . . Does the act have the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry,* 715 F.2d 971, 981 (5th Cir.1983).

When analyzed utilizing the *Berry* test, Plaintiff's claims fail to demonstrate a continuing violation, much less offer a compelling showing of circumstances. Plaintiff asserts two general discriminatory violations that occurred *beyond* the 300 day statute of limitations window: 1) the alleged hugs, kisses, and comments, and 2) the alleged inaction of Marcil in response to Plaintiff's internal complaint. Plaintiff asserts three general discriminatory violations that occurred *within* the 300 day statute of limitations window: 1) the alleged involuntary decision to forgo participation in the Riverside trip, 2) the alleged unwanted staring, and 3) the alleged retaliatory investigation and reprimand linked to Levinthal's counter-allegation.

Comparison of the type, frequency, and severity of conduct involved in these two sets of allegations counsels against an extension of the statute of limitations. First, the type of discrimination involved in the two sets of alleged acts is very much different. Conduct beyond the statute of limitations allegedly involved physical touching and supervisor inaction, while conduct within the 300 day window involved psychological intimidation and active retaliation. Second, the acts alleged were not recurring. Rather, they were more in the nature of isolated incidents. The touching that occurred beyond the statute of limitations did not repeat within the 300 day window period. Conversely, the staring that occurred within the statute of limitations did not occur beyond the 300 day window period. Lastly, the nature of the touching was of sufficient severity to trigger the Plaintiff's awareness of her justification in asserting her employment rights. Yet she refrained from filing an EEOC complaint until approximately two years after the alleged incidents.

Most important, applying the Second Circuit's definition of a continuing viola-

tion, it does not appear from the alleged facts that related instances of discrimination were permitted to continue unremedied for so long as to amount to an "ongoing" discriminatory policy. *See Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998). Of critical importance is that the alleged related incidents of discrimination are attenuated in time. The time-barred alleged physical touching occurred in early to mid 1995. Plaintiff's internal complaint was not levied until early 1996. The alleged continued sexual harassment taking the form of Plaintiff's withdrawal from the Riverside trip did not occur until almost one year after the last alleged physical touching. Finally, the unwanted staring is not alleged to have occurred until sometime in the Fall or Winter of 1996, almost a year after Plaintiff's internal complaint and a year and a half after the last alleged touching. All of these acts are sufficiently isolated in time as to thwart the plausibility of a claim of a continued policy of discrimination. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir.1998) (holding incidents occurring in 1985, 1988, 1989, and 1990 too attenuated in time to warrant application of continuing violation exception).

### B. Actionable Conduct

Still to be determined is whether Plaintiff's allegations based in facts that are not time-barred, that is that occurred after May 21, 1996, sufficiently state a Title VII hostile environment claim for which relief might be granted.[6]

██ The Supreme Court has stated that a hostile environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment." *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). For relief to be granted, the environment must be both objectively hostile and the employee must have subjectively so perceived it. *Id.*, at 21–23, 114 S.Ct. 367; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (1995). Acts and perceptions are to be assessed in light of their total context. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367. Any heightened sensitivity prompted by earlier arguably objectionable conduct is to be taken into account. *See Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir.1998).

██ Because of the ambiguities and rapidly changing mores of the workplace, borderline assessments of sexual harassment are best left to a jury. *See Gallagher*, 139 F.3d at 342. Here, a jury could reasonably find that the alleged acts occurring within the 300 day statute of limitations period created a hostile environment. To be pervasive, complained of acts must be continuous and concerted; more than simply episodic. *See Carrero v. New York City Housing Authority*, 890 F.2d 569, 577–78. Plaintiff in fact alleges continuous and concerted incidents of staring, or perhaps more accurately, leering. "Levinthal would come into the cafeteria and stand around and stare at the Plaintiff, making the Plaintiff very uncomfortable." *Comp.* at ¶ 37. Levinthal allegedly also "[came] into the main office where the Plaintiff works and stared at her for long periods of

---

6. Plaintiff also claims unlawful sexual harassment under New York State Human Rights Law § 296(1). Because New York courts require the same standard of proof for HRL § 296(1) claims as Title VII claims, *see Reed v.* *A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir.1996), the following Title VII sexual harassment and retaliation discussions applies to both causes of action.

time while she was trying to do her job." *Comp.* at ¶ 47. What is to one person mere observation to another might be hostile and abusive staring or leering. *See* David M. Fetterman, *Ethnography: Step by Step* 18 (2d ed.1998) (describing role of cultural context in defining behavior (e.g. difference between blinking and winking)). However unlikely, if the alleged staring or leering is frequent, intense, and severe enough, it alone could reasonably be found to rise to the level of creating a hostile environment.

 This Court's sexual harassment inquiry, however, does not end with a finding that a hostile environment claim has been sufficiently stated. In addition to a hostile work environment, a plaintiff sexually harassed must show that a "specific basis exists for imputing the conduct that created the hostile environment to the employer." *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir. 1996) (quoting *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995)). Where the alleged harasser is a supervisor, a presumption of absolute employer liability attaches. *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). A supervisor is one "empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control." *Id.,* at 2269.

 Plaintiff does not allege Levinthal to be her supervisor. In oral argument, Defendants made it a point to note that Levinthal was a mere co-worker to Plaintiff. *Trans.* p. 14. It is a critical position

that Plaintiff did not contest. *Id.* Unlike in the case of a supervisor, employer liability in the case of a co-worker's harassment attaches only if the employer "knew or should have known about the [alleged harassment] and failed to stop it." *Burlington,* 118 S.Ct. at 2267; *see also Murray,* 57 F.3d at 249. In Plaintiff's case, it cannot be said that the District failed to stop the alleged harassment because the harassment was not continuing when brought to the District's attention via its agent, Acting Principal Marcil. In June 1995, Plaintiff acknowledges she first expressed unwelcomeness to Levinthal regarding the alleged kisses. That alleged behavior then ceased. Six months later, and with no intervening harassment alleged, Plaintiff reported those past kisses to Marcil. The District cannot be said to have failed to stop physical behavior that had already stopped a half a year prior to the time that an internal complaint was communicated, four months prior to the applicable 300 day statute of limitations window, and that never resurfaced following the internal complaint. Thus, there being no extension of employer liability, Defendants' motion to dismiss Plaintiff's sexual harassment claim is accordingly granted.[7]

## II. Title VII Retaliation Claim

 Irrespective of the merits of an underlying sexual harassment claim, Title VII also provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful practice by this subchapter ...." *See* 42

---

7. For a HRL sexual harassment claim, plaintiffs must prove that an employer "became a party to [the harassment] by encouraging, condoning, or approving it." *See Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,* 65 N.Y.2d 300, 491 N.Y.S.2d 293, 295,

480 N.E.2d 1075 (1985). That Plaintiff fails to meet the lesser Title VII employer liability standard leads this Court to grant Defendants' motion to dismiss Plaintiff's HRL sexual harassment claim as well.

U.S.C. § 2000e–3(a); *see also Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 762 (2d Cir.1998). A prima facie case of retaliation requires a plaintiff to demonstrate by a preponderance of the evidence "i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (1995). Where an adverse employment action follows an internal complaint of discrimination, timing alone is sufficient to support an inference of causation. *See Quinn*, 159 F.3d 759, 766 (holding retaliation causation inference appropriate where adverse employment action followed complaint by two months); *see also Tomka*, 66 F.3d, at 1308 (1995) (time sequence supporting inference of discrimination); *Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986) (same).

▪ Plaintiff has asserted facts sufficient to state a claim of retaliation. She participated in a protected activity in registering internal complaints regarding Levinthal's behavior with Marcil in 1996 and later with Adams and Salerno in 1997. She received a formal reprimand from the District in response to Levinthal's counter-allegation, which she asserts was meritless while her claim was meritorious. It is reasonable for this Court to infer, especially in the context of considering a motion to dismiss, a causal connection between the internal complaints, counter-allegation, and reprimand. Marcil is alleged to have responded to Plaintiff's initial complaint with a statement of her friendship with Levinthal. Less than six months later she is alleged to have reported to District staff Levinthal's counter-allegation. That counter-allegation was investigated less than three months later in the Fall. Plaintiff brought another internal complaint of harassment in February 1997 and was disciplined in March 1997. The temporal sequence supports an inference of causation. Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is denied.

### III. Individual Liability under HRL

▪ Plaintiff seeks to hold Defendants Levinthal, Marcil, Salerno, Donovan, & Davis individually liable under HRL § 296(6), which provides that it is unlawful "for any person to aid, abet, incite, compel or coerce" sex discrimination and sexual harassment. N.Y. Exec. Law § 296(6) (McKinney 1998). Section 296(6) has been interpreted in the Second Circuit to extend personal liability in sexual harassment claims to "a defendant who actually participates in the conduct giving rise to a discrimination claim," *see Tomka*, 66 F.3d, at 1317 (2d Cir.1995), as well as to those individuals who "aide or abet *a primary violation* of the HRL committed *by another employee.*" *See Rivera v. Prudential Insurance Co.*, 1996 WL 637555, *13 (N.D.N.Y. Oct. 21, 1996) (internal quotations omitted and emphasis added). Defendants correctly argue that mere "ineptitude and insensitivity" in response to a complaint of harassment standing alone is insufficient to support a finding of personal liability. *Id.; see also Karibian v. Columbia University*, 930 F.Supp. 134, 146 (S.D.N.Y.1996).

Taking the alleged facts as true, Levinthal's motion to dismiss his personal liability fails insofar as he is accused of actually carrying out the conduct giving rise to the discrimination claim. *See Tomka*, 66 F.3d at 1317; *see also Steadman v. Sinclair*, 223 A.D.2d 392, 636 N.Y.S.2d 325, 326 (1996) (individuals may be held liable as aiders and abettors under HRL 296(6) for aiding employer in instigating retaliatory lawsuit in response to filing of EEOC complaint). By contrast, because no specific

facts are alleged as to the nature of Defendants Donovan and Davis' aiding or abetting a primary violation of Plaintiff's civil rights, their motions are granted. Plaintiff has merely offered that Levinthal told her that Donovan and Davis were his friends, and claimed that "upon information and belief, Defendants Donovan [and] Davis . . . conspired with Mr. Levinthal and Ms. Marcil to make up and/or conceal certain facts." *Comp.* at ¶ 44. Being solely presented with a conclusory allegation that fails to give fair notice of the grounds upon which the claim rests leaves this Court with no choice but to grant Defendants Donovan and Davis' motion to dismiss. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Marcil & Salerno's motions to dismiss must be granted as well. Marcil cannot be said to have aided or abetted conduct which did not continue after Plaintiff's internal complaint was lodged. Although Salerno is the individual who ultimately communicated to Plaintiff the District's findings and response to the complaint and counter-charges, an allegation of personal liability cannot be sustained based on those acts alone. Salerno may or may not have been incorrect in his findings and response, but personal liability under § 296(6) does not extend for mere factual error. *See Rivera,* 1996 WL 637555 at *13.

This court need not reconcile granting Salerno's motion to dismiss Plaintiff's aiding and abetting claim with its concomitant denial of Defendants' motion to dismiss Plaintiff's Title VII retaliation claim. Today's Title VII retaliation finding is merely that Plaintiff has successfully alleged sufficient facts to support a prima facie retaliation case against her employer, *see infra* Part II, not that retaliation in fact occurred. *See Reed v. A.W. Lawrence &*

*Co.,* 95 F.3d 1170, 1177 (2d Cir.1996) (applying three-step burden shifting analysis to Title VII retaliation claim). Moreover, it is not clear that retaliation as alleged is a primary violation of Plaintiff's civil rights in this case, as opposed to a derivative one. Nor is the alleged retaliation in this case carried out by an employee, but rather by an employer. Regardless, in the present case as it relates to Marcil and Salerno, Plaintiff has merely offered conclusory allegations. Thus, Marcil and Salerno's motion to dismiss are also granted.

## IV. Section 1983 Claim

Section 1983 furnishes a cause of action for persons whose United States Constitutional rights have be violated. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Unlike a Title VII claim, the statute of limitations for a section 1983 cause of action is three years. *See Okure v. Owens,* 816 F.2d 45, 49 (2d Cir.1987). This Complaint was filed on March 9, 1998. Alleged conduct following March 9, 1995 is without question relevant to Plaintiff's section 1983 claim. Application of the continuing violation exception is appropriate in the section 1983 context, sweeping into review the alleged assaults of January and February 1995, because of their similar nature and close proximity in time to the otherwise timely, for section 1983 purposes, alleged assault June 1995. With the alleged specific facts taken in sum, Plaintiff has stated a claim sufficient to meet the heightened prima facie burdens involved in a sexual harassment and retaliation-based section 1983 claim.

By now it is well-established that where sexual harassment constitutes discrimination which violates the Equal Protection Clause, such harassment is actionable under section 1983. *Annis v. County of Westchester, N.Y.,* 36 F.3d 251,

254 (2d Cir.1994). Not all conduct, however, that constitutes sexual harassment under Title VII is sufficient to establish a constitutional violation. *Id.* ("[W]e do not subscribe to a categorical view that sexual harassment equals sex discrimination."); *see also Cohen v. Litt,* 906 F.Supp. 957, 964 (S.D.N.Y.1995) (holding that "the safeguards of the equal protection clause may not be assumed to be equivalent to those of Title VII").

■ In determining the circumstances when sexual harassment constitutes a violation of the Equal Protection Clause, this Court is guided by the Second Circuit's holding that where "sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination." *Annis,* 36 F.3d at 254. That is essentially the same standard used to establish constructive discharge under Federal discrimination statutes. *See Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 161 (2d Cir.1998) (holding constructive discharge was established under the Age Discrimination in Employment Act where employer made "working conditions [1] so intolerable that [the employee was] forced into an involuntary resignation" *or* "[2] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.") (internal citations omitted).

Compelled resignation in the context of sexual harassment thus requires a plaintiff demonstrate that the relevant harassment rises above the minimum level necessary to sustain a hostile environment claim. *Compare Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (harassment actionable where so severe or pervasive as to alter conditions of employment) *with Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 161 (2d Cir.1998) (constructive discharge where conditions so in-

tolerable as to force resignation); *see also Ternullo v. Reno,* 8 F.Supp.2d 186, 192 (N.D.N.Y.1998). Typically, such claims are established when "an employee is subjected to an unreasonable risk of physical harm, to significant verbal abuse, or is forced to accept significantly lower pay or inferior working conditions . . . ." *Kirsch,* 148 F.3d at 161. Here, Plaintiff was (1) not prompted to resign by Defendants' alleged conduct. The question therefore for the purposes of the pending motion is (2) whether a reasonable person in the Plaintiff's shoes would have felt compelled to resign because of the risk of physical harm, abuse, or otherwise significantly inferior working conditions.

In *Doolittle v. Ruffo,* 1996 WL 159850 (N.D.N.Y. March 27, 1996), one of the defendants was alleged to have on more than *twenty* occasions touched the plaintiff's person, made crude remarks about her body parts, attempted to kiss her, caressed parts of her body, cornered her when they were alone, and pressed himself up against her buttocks. That sum total of conduct as alleged, though clearly actionable as hostile environment sexual harassment, was held not to rise to the level of abuse where a reasonable person in the plaintiff's shoes would have felt compelled to resign. Here, the alleged harassment—consisting basically of three kisses, staring, and retaliation—is less serious. That the Plaintiff did not in fact resign and that the conduct alleged is less serious than in *Doolittle* counsels that the alleged sexual harassment does not rise to the level of constructive discharge and therefore is not a constitutional violation.

Plaintiff also, however, has asserted a section 1983 claim for retaliation. Again, as with comparing the burdens involved in a Title VII sexual harassment claim and section 1983 claim, Plaintiff's prima facie burden in the section 1983 context is high-

er. A prima facie case of Title VII retaliation requires a plaintiff to demonstrate by a preponderance of the evidence: "i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (1995). A prima facie causal connection in the Title VII retaliation context may be met through inference rising from asserted facts indicating a close temporal sequence between a protected employee activity and adverse employer action *See infra* Part II. The Title VII causal connection requirement may therefore be thought of as a required showing of proximate causation. *See generally, Restatement (Second) of Torts* §§ 9, 430–453, & 870.

In a section 1983 claim, however, a plaintiff bears a prima facie burden of sufficiently alleging both proximate causation and that his or her "engagement in protected conduct was at least a 'substantial' or 'motivating' factor in the adverse action taken against by the state defendant, a standard greater than a mere 'causal connection.'" *See Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir.1998). The time sequence of events alone may once again offer a sufficient factual basis for this Court to infer such motivation. But because the Plaintiff's reprimand is allegedly borne of a dueling sexual harassment counter-allegation involving the same parties, which again the Plaintiff claims is meritless, it becomes clear that a reasonable jury could find that the Plaintiff's allegation played a "substantial or motivating" role in the counter-allegation and District's ultimate finding that Plaintiff sexually harassed Levinthal.

Moreover, Plaintiff's major contention is that she was treated differently than her alleged harasser, Levinthal. Plaintiff claims there was no effective response to her January 16, 1996 internal complaint, that the District did not investigate her claim until a time in the Fall of 1996, soon following Levinthal's counter-complaint, and that the District conducted what amounted to a "sham investigation." *Plain. Mem. of Law*, at 18. On point is the Second Circuit case of *Sorlucco v. New York City Police Department*, 888 F.2d 4 (1989). In *Sorlucco*, the plaintiff claimed she was treated differently from her alleged attacker, that he was not questioned about the alleged assault until eight months after her complaint, and that the defendant's investigation and response amounted to a "whitewash." *Id.*, at 7. There, as here, the Second Circuit was not in a position to hold the alleged attacker guilty of assault nor find that the defendant's handling of the case was non-discriminatory. *Id.* There, as here, it was held to be the proper province of a jury to determine if the plaintiff's charges were true, and if so whether she was intentionally treated differently than her fellow male employee. *Id.*, at 8.

Although the District's motion to dismiss Plaintiff's section 1983 claim is properly denied, the same cannot be said of individual Defendants' motions to dismiss. "The requirement that specific facts be alleged in section 1983 cases is especially important where … there are several defendants named in the complaint." *See Gierlinger*, 160 F.3d 858, 866. Here, Plaintiff's section 1983 claim seeking to hold the individual Defendants personally liable, like her HRL § 296(6) claim discussed above and section 1985 claim discussed below, is simply too conclusory to survive a motion to dismiss. *See infra* Parts III & V. There must be, and is not here, specific factual allegations as to how each individual defendant was responsible for the alleged con-

stitutional violation. Plaintiff has put forth a conspiracy theory, but no more. Accordingly, the District's motion to dismiss Plaintiff's section 1983 claim is denied and, with exception as to Defendant Levinthal, individual Defendants' motions are granted.

## V. Section 1985 Claim

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. 42 U.S.C. § 1985(3).

Because this clause of section 1985 focuses on conspiracies with intent to deny a person "the equal protection of the laws," Plaintiff must allege that she is a member of a protected class, that the defendants conspired to deprive her of her constitutional rights, and that in doing so, "defendants acted with class-based, invidiously discriminatory animus ...." *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir.1989).

■ By now it is axiomatic that women are a protected class for the purposes of section 1985 and that distinctions based upon immutable characteristics such as sex are invidiously discriminatory. *See New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1359 (1989). To successfully state a claim, however, Plaintiff must also allege that Defendants' collective actions were motivated by Plaintiff's membership in the protected class. *See Gleason*, 869 F.2d at 695. "More than vague or conclusory allegations of ... invidious motivation are necessary to survive a motion to dismiss a claim" under 42 U.S.C. § 1985. *Srubar v.*

*Rudd, Rosenberg, Mitofsky & Hollender*, 875 F.Supp. 155, 162 (S.D.N.Y.1994).

■ Plaintiff alleges Defendants conspired in failing to remedy Plaintiff's internal complaints of sexual harassment and disciplining her for allegedly sexually harassing Defendant Levinthal. Again, however, she has not alleged specific facts supporting a finding of collective discriminatory animus. It is entirely conceivable that individual Defendants' separate acts were either alternately the result of good faith error or motivated by a desire to insulate themselves from personal liability. A more specific allegation of intent is needed to maintain Plaintiff's section 1985 claim. Defendants' motion is accordingly granted.

## CONCLUSION

For the reasons stated above, it is hereby

1. ORDERED that Defendants' motion to dismiss Plaintiff's sexual harassment and age discrimination claims in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination Act of 1967, the New York Human Rights Law, and 42 U.S.C. §§ 1983, 1985 is GRANTED;

2. Defendants' motion to dismiss Plaintiff's unlawful retaliation claims in violation Title VII of the Civil Rights Act of 1964, New York Human Rights Law, and 42 U.S.C. § 1983 is DENIED;

3. Defendants William Adams, Nancy Davis, Peggy Donovan, Deborah Marcil, and Blaise Salerno's motions to dismiss Plaintiff's claims relating to their individual liability for sexual harassment, unlawful retaliation, denial of constitutional rights under the Equal Protection Clause to the United States Constitution, and conspiracy under Title VII of the Civil Rights Act, New York Human Rights Law § 296(6), and 42 U.S.C. §§ 1983, 1985 are GRANT-

ED, without prejudice, and Defendant Roger Levinthal's corresponding motion is DENIED; and

4. Defendants William Adams and Farnsworth Middle School are removed as named Defendants in the above entitled action.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.