**Yaseen SHARIF, Plaintiff,**

v.

**Willie BUCK, Jr., Defendant.**

**No. 98–CV–6551L.**

United States District Court,
W.D. New York.

Sept. 30, 2004.

Yaseen Sharif, Rochester, NY, for Plaintiff.

Louis N. Kash, Patrick B. Naylon, Rochester, NY, for Defendants.

### DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Plaintiff, Yaseen Sharif ("plaintiff"), a former employee of the Rochester City School District, filed this *pro se* action seeking relief under 42 U.S.C. § 1983 against defendant Willie Buck, Jr. ("defendant" or "Buck"). Buck, now retired, was at all relevant times the principal of Martin Luther King Jr. School #9 ("the School") where plaintiff worked as a paraprofessional. Plaintiff claims that Buck discriminated against him based on his religion (Islam) and terminated him without due process of law.

---

1. Although defendant styled the motion as one "to dismiss and or for Summary. Judgment," *see* Dkt. #37, he filed evidentiary material outside of pleadings in support thereof.

Defendant now moves pursuant to FED. R. CIV. P. 56 for summary judgment. (Dkt. #37).[1] For the reasons set forth below, that motion is granted.

### DISCUSSION

**1. Summary Judgment Standards**

When deciding a motion for summary judgment brought pursuant to Fed. R.Civ.P. 56, a court's responsibility is to determine whether there are issues to be tried. *Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir.2001). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' ... An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

I find that defendant is entitled to summary judgment. Plaintiff has failed to submit sufficient evidence to raise an issue of fact that Buck's nondiscriminatory reasons for recommending his termination are not worthy of belief, or that Buck terminated him because he was a Muslim.

As such, the motion is properly treated by the Court as one seeking summary judgment. FED. R. CIV. P. 56.

## 2. 42 U.S.C. § 1983 Claims

■ Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). It merely provides "a method for vindicating federal rights elsewhere conferred," *id.*, such as a federal statute, or as in this case, the Constitution itself.

■ A § 1983 claim has two elements: (1) the defendant acted under color of state law; and (2) as a result of defendant's conduct, plaintiff suffered a denial of a federal statutory or constitutional right or privilege. *See Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994). I will assume that plaintiff has shown that Buck was acting under color of state law because he was acting in his official capacity as the principal of a public city school. However, plaintiff's claims fail on the second element.[2]

Plaintiff asserts that, as a result of defendant's conduct, he was denied his First and Fourteenth Amendment rights. Specifically, plaintiff alleges that Buck violated his First Amendment freedom of religion by scheduling his hours of work in such a manner as to interfere with and restrict plaintiff's right to observe and practice his religion. Plaintiff also claims that Buck terminated him because he is a Muslim. Lastly, plaintiff claims defendant caused his due process rights to be violated under the Fourteenth Amendment by failing to address his termination through the grievance process developed with plaintiff's union.

### A. First Amendment Claim

■ Defendant is entitled to summary judgment on plaintiff's First Amendment claim that Buck interfered with his freedom to practice his religion. It is undisputed that plaintiff and Buck agreed at some point during the 1994–1995 school year that plaintiff could attend congregational prayer services on Friday afternoons. Plaintiff agreed to forfeit his lunch and break times on Wednesdays and Thursdays to make up the time missed on Fridays. (*See* Dkt. # 37, Buck Aff., ¶ 44; *see also* Dkt. # 27, Response # 12).

Plaintiff's allegations regarding how and when defendant changed his schedule to interfere with his observance of his religion are not articulated well in any of his pleadings. Nevertheless, construing plaintiff's *pro se* pleadings to raise the strongest argument that they suggest, plaintiff seems to suggest that Buck no longer honored this agreement when he disciplined him on one occasion for being late on a Friday afternoon. (Dkt. # 58). On December 11, 1995, defendant sent the Human Resources Department a recommendation that plaintiff be docked one hour of work pay for returning to school late on Friday, December 8, 1995. The recommendation stated that plaintiff returned at 2:58 p.m. instead of "at 2:05 p.m., as agreed upon between Mr. Sharif and Mr. Buck." (*See* Attachment to Dkt. # 58). Plaintiff's union representative was notified of the disciplinary action taken.

On December 12, 1995, plaintiff filed a grievance regarding a change in his work

---

**2.** Because I find that defendant is entitled to summary judgment based on the substantive merits of plaintiff's claims, I need not address defendant's contention that he was entitled to qualified immunity.

schedule. After a hearing, the union found that the change was initiated in order to adjust to operational changes caused by enrollment fluctuation at the School and to diffuse unsatisfactory working relationships between plaintiff and two teachers. (Dkt. # 51, March 12, 1996 letter to Grievance Committee Co–Chairperson, Martha Keating).

Plaintiff has failed to submit any evidence that calls into question the legitimate operational reasons offered by defendant for changing plaintiff's schedule. There is no evidence in the record that defendant took this action in order to infringe on plaintiff's right to practice his religion. Moreover, this single incident is not the kind of deprivation of rights that § 1983 was meant to remedy. That is particularly true in the instant case, where it is undisputed that defendant accommodated plaintiff's religious practices for the better part of the 1994–1995 and 1995–1996 school years. Therefore, defendant is entitled to summary judgment on this claim. *Cf. Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84–85, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (employer not obligated to accommodate religious beliefs of employees that would result in an imposition on other workers or cause the employer to bear more than de minimis costs); *Erlach v. New York City Bd. of Educ.*, No. CV 94 4239, 1996 WL 705282 (E.D.N.Y. Nov. 26, 1996) (granting summary judgment to school district on religious discrimination claim where evidence demonstrated that accommodation requested by teacher was unreasonable and would have created undue hardship on employer).

## B. Termination Based on Religious Discrimination

In analyzing whether conduct was unlawfully discriminatory for purposes of claims brought under § 1983, courts borrow the familiar burden-shifting framework applicable to Title VII claims. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998); *see Sorlucco v. New York City Police Dep't*, 888 F.2d 4, 7 (2d Cir.1989). Plaintiff first must establish a prima facie case of discrimination. Once a prima facie case is established, the burden shifts to the employer to show that a legitimate, non-discriminatory reason exists for the plaintiff's termination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once such a showing is made, however, the ultimate burden of proving discrimination remains with the plaintiff. *See St. Mary's Honor Ctr.*, 509 U.S. at 506–07, 113 S.Ct. 2742.

Even though the "burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion 'at the prima facie stage is de minim[i]s,'" *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (*quoting Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988)), I find that plaintiff has failed to carry that burden here. "In order to establish a prima facie case of discriminatory discharge, the plaintiff must show (1) that he belongs to a protected class; (2) that he was performing his duties satisfactorily; (3) that he was discharged; and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *Id.*

Plaintiff has not presented sufficient evidence to allow a reasonable jury to find either that he was performing his job satisfactorily at the School or that his termination occurred in circumstances giving rise to an inference of discrimination. In

fact, the record shows that plaintiff was not performing his job satisfactorily. It also shows that he was terminated because of his work-related disciplinary problems, not because of his religion.

Plaintiff's overall evaluations for the 1993–1994 and 1994–1995 school years stated that he "needs improvement." During the 1995–1996 school year, plaintiff received a number of verbal and written warnings concerning absenteeism/tardiness, refusing certain assignments, not following directions, and once leaving children unattended in a classroom. Defendant gave plaintiff two different written reprimands for neglect of duty and insubordination on or about November 20, 1995 for this conduct. (Dkt. # 37, Buck Aff., Exs. C and D). On January 16, 1996, plaintiff was notified that his name was placed in the midyear report of those employees with less than satisfactory performance. (Id. at Ex. E). Plaintiff was also given a final reprimand for coming to work late, insubordination, and neglect of duty. Plaintiff was advised that any further conduct of this nature would result in disciplinary action up to and including termination. (Id. at Ex. F).

Thereafter, an incident arose on April 23, 1996, between plaintiff and another employee. The other employee filed a complaint alleging that plaintiff stated in a loud voice in the School that "God didn't make faggots" and that he "wished that we could get rid of these faggots." The employee also claimed that plaintiff later told him to leave a classroom stating, "I still have a problem with you," and acted in an intimidating manner towards him. Finally, during a meeting about the incident between a union representative, the employee, and plaintiff, the employee claimed that plaintiff became "very loud and intimidating" and threatened him with physical harm. (Dkt. # 47, Exs. 2 and 3).

On April 25, 1996, plaintiff was notified of his suspension without pay pending disciplinary action. The suspension was the result of the incident on April 23, 1996, and his previous disciplinary record. On May 2, 1996, the Rochester City School District and Board of Education voted to accept the resolution for plaintiff's termination, effective April 24, 1996. (Dkt. # 37, Exs. J and K).

Plaintiff has offered no evidence that disputes these material facts in any meaningful way. Although plaintiff claims that defendant terminated him because he was a Muslim, there is nothing in the record to support that contention. "Conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56[ ]." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985). Even viewed in the light most favorable to the plaintiff, the record is devoid of evidence to support his claim that defendant's conduct was motivated by anti-Muslim discriminatory animus. Plaintiff does not contend that Buck used racial epithets or referred in any way to his religious beliefs.

Even assuming that plaintiff established a prima facie case, he failed to raise an issue of fact that the legitimate reasons articulated by defendant for taking steps to recommend his termination were nothing but a pretext for discrimination. Instead, plaintiff takes issue with the legitimacy of the disciplinary conduct taken against him in 1995–1996 school year, in essence offering "his side" of the events in question. (See, e.g., Dkts. # 47, 49, 54, 55). However, the inquiry is not whether the employer's decision to discipline and then terminate him were good decisions. Rather, the relevant inquiry is whether these actions were taken for discriminatory reasons related to his religion. There simply is no proof of discriminatory motive here, and plaintiff's unsupported allegations are

not sufficient to survive a motion for summary judgment. *See Chambers,* 43 F.3d at 38 (to survive summary judgment, "proffered admissible evidence [must] show [ ] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive").

## C. Fourteenth Amendment Due Process Claim

■ Finally, plaintiff's claim that defendant violated his due process rights by not referring the matter to his union is meritless. During his employment, plaintiff was a member of the Rochester Association of Paraprofessionals of The Rochester Teachers Association ("RAP" or "the union"), the bargaining unit and representative for school district paraprofessionals. The terms and conditions of plaintiff's employment were governed by a collective bargaining agreement ("the cba"). The cba included procedures for discipline, termination, and for filing grievances. (Dkt. # 41).

Consistent with the cba provisions regarding termination, defendant, as the principal, was responsible only for referring the matter to the Human Resources department. (Dkt. # 41, Section 13.B(5)) ("the building principal … shall submit a recommendation for dismissal to the Supervising Director of Human Resources with copies to the employee, the RAP Chairperson and the employee's personnel record."). He did so here. (Dkt. # 37, Buck Aff. ¶ 50). The Human Resources Department was thereafter responsible for taking steps to notify plaintiff of his suspension and his eventual termination. Ultimately, the decision to terminate him was made by the Rochester City School District and the Board of Education. Buck's involvement, therefore, was limited to the early stages of the disciplinary process.

Plaintiff does not contend that Buck failed to follow any specific procedure related to his termination. Instead, plaintiff takes issue with the fact that his union, RAP, failed to follow up on a grievance that he filed in the weeks after he was terminated claiming that he was discriminated against on account of his "creed" and discharged in contravention of the procedures in the cba. (*See* Dkts. # 51, 53). Plaintiff submitted evidence demonstrating that RAP only partially completed the process regarding his grievance, and may not have held a hearing. (*See* Dkt. # 51, attachments dated July 10 and October 21, 1996). Plaintiff also filed exhibits relating to the subsequent conviction of RAP union president, Linda Nash, for larceny for stealing from the union's coffers, as well as the subsequent investigation and civil suit brought by the New York State Attorney General's Office against the union. (Dkts. # 47, 65).

This evidence calls into question the conduct of plaintiff's union. However, plaintiff failed to submit any evidence that defendant Buck was responsible for or in any way connected to the union's conduct vis-a-vis plaintiff's grievance. In the absence of any proof that Buck was personally involved in the violation of plaintiff's procedural due process rights, he cannot be individually liable under § 1983, *Patterson v. County of Oneida,* 375 F.3d 206, 229 (2d Cir.2004); *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 118 (2d Cir.2004).

Finally, to the extent that plaintiff claims defendant violated his substantive due process rights for taking unreasonable disciplinary action against him, that claim must fail. Plaintiff may disagree with the personnel decisions made by defendant during the course of plaintiff's employment at the School. Nevertheless, in the absence of any evidence that those actions

were taken for discriminatory reasons, or in violation of some other constitutional right, his claim must fail. As stated by the Supreme Court in *Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976):

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

### CONCLUSION

Defendant's motion to dismiss and/or for summary judgment (Dkt. # 37) is deemed a motion for summary judgment only. That motion is granted, and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.